(CHANCERY.)

# HUNTER et al. v. BRYANT.

H., in contemplation of marriage with B., gave a bond for 5,000 dollars, and interest to trustees, to secure to B. a support, during the marriage, and after the death of H., in case she should survive him, and to their child or children, in case he should survive her; with condition that if H. should, within the time of his life, or within one year after the marriage, (whichsoever of the said terms should first expire,) convey to the trustee some good estate, real or personal, sufficient to secure the annual payment of 300 dollars for the separate use of his wife during the marriage, and also sufficient to secure the payment of the said 5,000 dollars to her use in case she should survive her husband, to be paid within six months after his death; and in case of her death before her husband, to be paid to their child or children; or, if H. should die before B., and by his will should, within a year from its date. make such devises and bequests as should be adequate to these provisions, then the bond to be void. H. died, leaving his widow B. and a son, having, by his last will, devised a tract of 1,000 acres of land in the Mississippi territory, to his son in fee; a tract of 10,000 acres in Kentucky, equally between his wife and son, with a devise over to her in fee of the son's moiety, if he died before he attained "the lawful age to will it away." And the residue of his estate, real and personal, to be divided equally between his wife and son with the same contingent devise over to her as with regard to the tract of 10,000 acres of land. The value of the property thus devised to her, beside the contingent interest, might have been estimated, at the time of H.'s death, at 5,000 dollars. B. subsequently died, having made a nuncupative will, by which she devised all her estate, "whether vested in her by the will of her deceased husband or otherwise," to be divided between her son and the plaintiff below, (Bryant,) with a contingent devise of the whole to the survivor. The son afterwards died, and the plaintiff brought this bill to charge the lands of H. with the payment of the bond for 5,000 dollars, and interest, to which the plaintiff derived his right under the nuncupative will of B.

By the laws of Kentucky this will did not pass the real estate of the testator, but was sufficient to pass her personal estate, including the bond.

Held, that the provision made in the will of H. for his wife must be taken in satisfaction of the bond, but subject to her liberty to elect between the provision under the will and the bond, and that this privilege was extended to her devisee, the plaintiff.

Actual maintenance is equivalent to the payment of a sum secured for separate maintenance, and, therefore, interest upon the bond during the husband's lifetime was not allowed.

Under all the circumstances of the case, it was determined that the bond was chargeable on the residue of the estate, and of this the personality first in order.

APPEAL from the circuit court for the District of Pennsylvania. This cause was argued by Mr. *Key* and Mr. *Hopkinson*, for the appellants and defendants, and by Mr. *Jones*, for the plaintiffs and respondents.

Mr. Justice JOHNSON, delivered the opinion of the court. <span>March 12th,</span>

This is an appeal from a decree in equity, in the district of Pennsylvania, on a bill filed by Thomas Y. Bryant, against the legal representatives of John Hare.

The object of the bill is to charge the lands of Andrew Hare, now deceased, through John Hare, to the appellants, defendants in the court below, with the payment of a bond for 5,000 dollars, and interest, given by Andrew Hare, in contemplation of marriage with Margaret Bryant, the mother of John Hare.

The land lies partly in the state of Kentucky, and partly in the Mississippi territory, and five of the defendants live in the state of Pennsylvania, the sixth in the state of Virginia. The bill was origin-

ally filed against all six of the legal representatives of John Hare; but the name of Mary Dickinson, the resident in Virginia, being stricken out by leave of court, five only were made defendants below.

The bond is executed to George Hunter and William Hunter, two of these appellants. The penalty is in the usual form, and bears date the 10th of November, 1789. The condition is in these words: "Whereas, by the permission of God, a marriage is intended to be had and solemnized between the above bound Andrew Hare, and Margaret Bryant, of the city of Philadelphia, spinster, and the said Andrew Hare, in consideration of the said marriage, and to secure a decent and competent support to and for his said intended wife, as well during the marriage as after his death, in case she should survive him, and to all and every the child or children which may be born of the said marriage, in case he should survive her, hath agreed that the sum of 5,000 Mexican dollars, part of the estate whereof, by the blessing of God, he is now possessed, and the interest and income thereof accruing annually should be vested in trustees, for the sole and separate use of the said Margaret Bryant, his intended wife, or the children born of her body in the manner hereinafter mentioned. Now, the conditions of the above obligation is such, that if the said Andrew Hare do, and shall, within the time of his life, or within the term of one year after the marriage shall take effect, (whichsoever of the said terms shall first expire,) convey and assure to the above-named George and William Hunter, the next

friends of the said Margaret Bryant, and trustees by
her for this special purpose chosen, or the survivor
of them, or his heirs, executors, administrators or
assigns, some good estate, real or personal, sufficient
to secure the payment of 300 Mexican dollars, as
aforesaid, to the trustees, or the survivor of them, on
every the 10th day of November, in every year after
the date hereof, for the sole and separate use of the
said Margaret, his intended wife, during the intend-
ed marriage ; which annual payment shall be at her
own disposal, and shall be paid upon her own orders
or receipts, independent and free from the inter-
meddling charge or control of her said intended
husband, and shall not be liable to any of his con-
tracts, debts, or engagements whatsoever, and also
sufficient to secure the payment of the sum of 5,000
dollars, as aforesaid, to and for the sole use of the
said Margaret, in case she shall survive her said in-
tended husband, to be paid to the said trustees, or
the survivor of them, for her use within six months
next after the death of her said intendec husband,
and in case of her death before her said intended
husband, to be paid to the said trustees, or the
survivor of them, for the use of all and every
of the child or children of the said Margaret, to
be born in pursuance of the intended marriage, to
be-equally divided amongst them, if more than one,
but if but one, then the whole to the use of the said
one.   Or, if the said Andrew Hare shall die before
the said Margaret, and by his testament and last will
shall, within the said year from the date hereof, give
and bequeath to her such estates, legacies, bequests

1817.

Hunter
v.
Bryant.

and provisions, as shall be fully adequate to the provisions here intended to be made for her, and her child or children; then, and in either of the said cases, the above written obligation shall be void, otherwise the same shall remain in full force and virtue at law, in this state of Pennsylvania, and in all other states or kingdoms whatever."

The marriage accordingly took effect, and except when the husband was necessarily absent, in prosecution of his business as a merchant, the parties lived constantly together in great harmony, and in a style fully consonant with the husband's resources. In 1793 he established himself in Lexington, Kentucky, and was engaged in mercantile transactions until his death, which happened in 1799.

By his will Andrew Hare devised a tract of 1,000 acres of land lying in the Mississippi territory to his son John, in fee. A tract of 10,000 acres in the state of Kentucky equally between his wife and son, with a devise over to her in fee of the son's moiety if he died before he attained " the lawful age to will it away." And the rest and residue of his estate, real and personal, he gives to be equally divided between his wife and son, with the same contingent devise over to her as is given with regard to the Kentucky tract of 10,000 acres. The value of the property thus devised to her, independent of the contingent interest which has since fallen, might reasonably have been estimated at the time of the testator's death at about five thousand dollars.

In 1801, about eighteen months after the husband, the wife died; after having made a nuncupa-

tive will, by which she devised all her estate, "whether vested in her by the will of Andrew Hare, her deceased husband, or otherwise," to be divided between her son John and the complainant below, Thomas Y. Bryant, with a contingent devise of the whole to the survivor.

John Hare died, aged about 11 years; and under this nuncupative will it is, that Thomas Y. Bryant derives his right to this bond. According to the laws of Kentucky this will was not sufficient to pass the landed estate of Margaret Hare, but it is good as to the personal estate, including the bond, which was the subject of this suit.

The defence set up in the answer below is, that the provision made in the will of the husband for his wife must be taken in satisfaction of this bond, inasmuch as he would otherwise have left his child, who ought to have been, and evidently was, the primary object of his care, probably destitute of support. And this court unanimously acquiesce in the correctness of this reasoning. For, every bequest is but a bounty, and a bounty must be taken as it is given. Positive words are not indispensably necessary to attach a condition. It may arise from implication, and grow out of a combination of circumstances which go to show, that without attaching such condition to a bequest, the primary views and prominent duties of the testator will be pretermitted. In this case, in addition to the striking improbability of the testator's intending to leave his child destitute, or even dependent, there are two circumstances which tend to show that the testator had no

expectation that in addition to the provision for his widow, his estate was to be made liable for this heavy debt. First, the condition of the bond holds out the alternative of making provision by will, in satisfaction of it. And, although we do not accede to the construction contended for, that this necessarily extended to his whole life, but think it was, in legal strictness, limited by the latter words of the condition to his death within one year, yet the words in the prior part of the condition " within the term of his life," were well calculated to excite in the mind of a man whose habits of thinking had not been corrected by technical exercise, an idea that he was legally, as well as conscientiously, complying with his obligation when executing this will. Secondly. The principal part of his bounty to his wife consists of the one half of the rest and residue of his estate, with a contingent devise over to her of the other half on the decease of his son ; thus disposing of the whole, and giving to her the one half of the natural and ordinary fund for the payment of this bond; a disposition of his effects that would have been idle under the supposition that this bond was to be exacted of his estate.

But, in the actual state of the rights and interests of these parties, at least in the view which this court takes of them, this question becomes a very immaterial one. For, the complainant, Bryant, acquires nothing of the estate of Andrew Hare, under the will of Mrs. Hare, but that part of the personality which she acquired under the residuary bequest of her husband. And this being unquestionably the

fund first to be applied to the payment of debts, it must. in his hands, be first subjected to the payment of this debt. It is only as connected with Mrs. Hare's acquiescence or election to take under the will that the question of satisfaction becomes material. In which case we should be bound to dismiss the bill altogether, on the ground of satisfaction. But here we are of opinion, that the evidence of election is not sufficient to bind Mrs. Hare. That she was perfectly at liberty to reject the provision under the will of her husband, and rest alone on her bond, is unquestionable. And if this election was never deliberately made in her lifetime, there can be no reason for denying the extension of it to her representative, Bryant. He now makes that election in demanding the payment of this bond, and we conceive that nothing unequivocally expressive of that election has before occurred, at least nothing that ought to preclude it. If the will had expressly given the property devised to her in satisfaction of this bond, she would have been put on her guard, and more cautious conduct might have been required of her; but, although a *court* may raise the implication, she was not bound to do it, and her mind was not necessarily led to an election. It is true, that in her will she notices the property acquired under her husband's will; but this is perfectly consistent with the idea that she took, under her husband's will, something in addition to her interests under the bond independent of that will. We are therefore of opinion, that the complainant is entitled to satisfaction of this bond; and as in the course of events, the interests of

the obligees, who stood in the relation of trustees to Margaret Bryant, have become hostile to those of the cestui que trust, he must have the aid of this court to enforce it. The only questions, then, are, how the bond shall be stated, and how the money shall be raised. And here the question occurs, on the allowance of interest during the husband's lifetime.

On this subject the majority of the court is satisfied, that actual maintenance is equivalent to the payment of a sum secured for separate maintenance. It is true, the husband cannot claim his election; but, if the wife and her trustees never demand it, it is considered as an acquiescence, or waiver, on their part, and this court will not afterwards enforce payment. [2 *P. Wms.* 84. 3 *P. Wms.* 355. 2 *Atkin.* 84. 4 *Bro. Ch. Cas.* 326.] In the present case, there is nothing in the bond that holds out the idea of making this interest an accumulating fund; no demand of a settlement was ever made; the parties lived together in perfect harmony, and the wife was maintained in a style fully adequate to the provision stipulated for. This bond was intended as a provision against the husband's inability or unwillingness to maintain his wife; but whilst steadily pursuing his avocation as a merchant, and faithfully discharging his duties as a husband, the reasonable conjecture is, that it was thought really best for his family not to withdraw so large a sum from his small capital. If the trustees or the wife had desired that the settlement should be made

in pursuance of the condition, they might have demanded it, and enforced a compliance at law or in equity. We, therefore, think that interest on the bond is not to be computed during the husband's life.

The only remaining question is, how the money is to be raised, or on what funds the bond is to be charged. And here there can be no doubt that the first fund to be exhausted is the residue of the estate ; and of this, the personal residue first in order. This, of course, sweeps all that part of Andrew Hare's estate that Bryant acquired under the will of Mrs. Hare; and included in this we find Hustin's bond for 3,272 dollars 86 cents. The one half of this bond was decreed in the court below to be an equitable offset against Hare's bond. All we know on the subject of this offset is extracted from the confessions of the complainant himself. From these it appears that the testator, Hare, held a bond of Hustin's for the delivery of a quantity of pork. This bond it was purposed to exchange for one for the delivery of a quantity of tobacco, and the testator, in his lifetime, despatched the complainant as his agent with instructions to effectuate the exchange. To enable him to do so, he assigned the bond for the pork to the complainant, instead of executing a common power of attorney. Whilst absent for this purpose, and before he had completed the arrangement with Hustin, Hare died; and Bryant proceeded no farther, until he had consulted Mrs. Hare and Mr. Todd, as executrix and executor of the will of Hare, on the propriety of proceeding. "On conferring with Mrs. Hare, and advising with Mr. Todd," to use Bryant's

own equivocal language, he' effected a negotiation, and having received the tobacco, took it down to New-Orleans, where, not meeting with a ready sale, he deposited it with one Moore, the factor and correspondent of Hare, in his lifetime. He took Moore's receipt for the tobacco so deposited, and all that we are told of the transaction subsequently is, that at the instance of Mr. Todd, he assigned that receipt to some house under the firm of John Jordan & Co., but who they were, or what finally became of the tobacco, the case does not show; and, for aught that appears to us, the proceeds of that adventure may at this day lie in the hands of the factor, subject to the order of the executor of Andrew Hare.

The court below thought these facts sufficient to charge Mrs. Hare with one half the amount of Hustin's bond. But this court are of opinion that the evidence is not sufficient for them to decide finally on the subject. Although it be generally true, that the executor, who by taking an inferior security or unreasonably extending time of payment, brings a loss upon his testator's estate, shall himself be liable, yet there are many objections to applying that principle to this case. The executor, who takes charge of the affairs of a man in trade, must necessarily, on the winding up of his affairs, be allowed a reasonable latitude of discretion; and in general, where there is manifest fidelity, diligence, and ordinary judgment displayed, this court will always with some reluctance enforce the rigid rules which courts have been obliged, for the protection of estates, to impose upon the conduct of executors. In the principal case the language of Thomas Bry-

ant is by no means positive as to the consent of either the executor or executrix, to this transaction. He says that he did it " after conferring with Mrs. Hare, and advising with Mr. Todd." But it does not follow that either of them assented because they were consulted, or that they did any thing more than express an opinion on the expediency of the measure. Neither of them had then qualified, nor was it at all certain that they would qualify, and the only person then empowered to act on this subject was Bryant himself; who, by virtue of the assignment which he held, possessed a power which legally survived his principal. Under this assignment it was that the negotiation was effected, and not by virtue of any power derived to him from the supposed assent of the executrix. Moreover, admitting the consent of the executrix, it is still doubtful whether any change of security did in fact take place. For, Hustin still remained the debtor—the articles of agreement substituted for the original bond bear the aspect of the purchase of a bond rather than the relinquishment of an advantage; the greater part, if not the whole balance, of the original debt was also payable in tobacco; and if the loss finally sustained proceeded, as is probable, from the insolvency of the factor, and not the reduced value of the commodity, this was by no means a necessary consequence of the change. Upon the whole, we are of opinion that the estate of Margaret Hare ought not in this mode, and upon the evidence now before us, to be charged with any part of Hustin's debt. For aught we know, Bryant may himself be liable for the whole,

1817.

Hunter
v.
Bryant.

by means of his mismanagement in the agency, or it may be in the power of the defendants to prove such acts of the executrix as may amount to a devastavit. On these points we do not mean to express an opinion or prejudice the rights of the appellants; we only mean to decide that the evidence in this case is not sufficient to sustain this discount.

After having settled these principles, the decree below must be reversed, and the case remanded for such further proceedings as are necessary to carry into effect the views of this court. But as only five-sixths of the land are represented in this court, we can decree for only five-sixths of the balance of the bond. After applying to it the residuary personal estate, for the balance the complainant will have to pursue his remedy against Mary Dickinson, unless the representatives shall have the prudence voluntarily to join in any sales of land that may be made under this decree.

DECREE. Whereupon it is ordered, adjudged, and decreed, that the decree of the circuit court of Pennsylvania district be reversed and annulled. And this court decrees, 1st. That the complainant, Thomas Y. Bryant, is entitled to recover of the estate of Andrew Hare the sum of five thousand dollars, with interest theron, at six per centum per annum from the day of the death of the said Andrew. 2dly. That the defendant, George Hunter, do pay to the complainant in the court below the balance in his hands of money of the estate of the said Andrew, with interest at the same rate from the day it was

demanded by the said complainant. 3dly. That the complainant, after giving credit for the sum that shall be thus paid him by the said defendant, and all other sums received by the said Margaret in her life, or the complainant since her death, from, or on account of, the estate of the said Andrew, as well as the value of any part of the personal residue of the said Andrew's estate, which may have come to their, or either of their hands, according to the date of such receipts, shall have the aid of the said circuit court to compel these defendants to raise by sale (if sufficient for that purpose) of their respective shares of the real estate of the said Andrew, descended to them, five-sixths of the balance that shall be computed to be due on the said bond, calculated as above directed. And, lastly, that the cause be remanded to the circuit court for further proceedings.