HUGH CHRISTY, and MORNING, his wife, appellants *v.* WILLIAM H. McBRIDE, administrator of Samuel Wilson, deceased, appellee.

*Appeal from Randolph.*

If an administrator act honestly and prudently, though there be a loss to, or a total diminution of, the intestate's estate, he will not be liable.

Where M., an administrator in Illinois, employed an agent in Virginia, to collect a demand due to his intestate's estate from a resident in Virginia, and the agent collected the money and appropriated the same to his own use, but never accounted for it to M.: *Held*, that as M. had been guilty of no misconduct, and had acted in good faith, he was not liable for the loss of the money.

*Quere.* Is an administrator in this State bound to collect demands due his intestate's estate, from residents of other States?

THIS cause was originally instituted in the Court of Probate of Randolph county, by Christy and wife, in her right as one of the heirs at law and distributee of Samuel Wilson, deceased, against McBride, administrator of the estate of said Wilson, to recover of him her distributive share of said estate, after all legal demands should be satisfied. On the trial before the Court of Probate, the administrator exhibited his account current, showing a balance in his hands, of $190,63¾, belonging to the heirs. The plaintiffs then proved that in addition to said balance of $190,63¾, McBride, as administrator, had obtained three notes made to said Wilson, the intestate, in his lifetime, by one John Kingley, of Washington county, Virginia, and amounting, with interest, to more than $800, and that said McBride, through his agent, one Charles Tate, had collected said notes, and that said Tate had appropriated the money to his own use, and that he, Tate, was insolvent, and unable to pay the amount to McBride. That McBride acted honestly, and in good faith, in sending said notes to said Tate; and before he sent them, he consulted with William C. Greenup, clerk of the County Commissioners' Court of Randolph county, and was by him advised to send the notes to Tate for collection, but that he had no personal knowledge of said Tate. That Tate, when the notes were sent to him, or about the time, was reputed to be in solvent circumstances, and had been, or was then, sheriff of Washington county. The Court of Probate, on this state of facts, decided that McBride was not liable for any part of this money so col-

lected by Tate, to the heirs and distributees of said Wilson, deceased. To which opinion, a bill of exceptions was tendered by said Christy and wife, and signed, and an appeal taken to the Circuit Court of Randolph county, where said judgment of the Court of Probate was affirmed, and a bill of exceptions tendered and signed, and the case brought to this Court by appeal. The cause was heard in the Circuit Court before the Hon. Theophilus W. Smith, at the September term, 1831.

S. Breese and D. Blackwell, for the appellants, contended,

1. Every person acting in a fiduciary character, is responsible to his *cestui que trust* for that which may be committed to his care by law, and nothing but inevitable accident will excuse him. 5 Vesey, Jr. 794, 800; 4 Dane's Abr. 270, 271.

2. An administrator is responsible if his agent embezzle the assets of the estate. 1 Dane's Abr. 590, Art. 16; 6 Mod. 93; Toller's Exrs. 426.

3. Upon general principles, the principal is responsible for the acts of his agent. Livermore on Agency, *passim.*

4. The appropriation of money collected by the agent of the administrator, is a collection and appropriation by the administrator himself, upon the maxim *qui facit per alium, facit per se.*

5. The administrator would be liable, without doubt, if he had gotten this money into his own possession, and the case is not altered by its being in the possession of a person of his own selection, who proves dishonest. Coxe's Dig. 48, § 27.

6. The case shows that McBride did not use due caution in the selection of his agent, nor did he select one whose business it is to collect notes, and he is therefore liable for such want of caution. Coxe's Dig. 318, § 27.

7. The loss of the money having happened by the act of the administrator, who ought to have used more than ordinary caution, it is more conformable to the principles of right and justice, that he should lose, than that the heirs and distributees should incur a loss, though he may not have been guilty of fraud. Coxe's Dig. 316, § 6, 7, 8, &c.; Breese 113, Duncan *v.* Morison and Duncan.

8. The administrator, by trusting Tate, took security inferior to Kingley, the maker of the notes; and having thereby brought a loss on the estate, he is liable. Hunter *v.* Bryant, 2 Wheat. 32; Coxe's Dig. 13.

9. The evidence shows that McBride did not take the same care, or use the same caution, in regard to the notes, that a moderately careful man takes of his own affairs, and he is therefore liable for ordinary neglect. Coxe's Dig. 80, *Bailment;* Jones on Bailment 68, 69, 168.

10. The only cases known to the law, where an executor or

administrator is discharged for losses, are, where he may be robbed, or where the stock falls, or funds fail, in which he, with good faith, has invested the funds of the estate, or where, acting in compliance with law, a loss inevitably happens. 1 Dane's Abr. 270, 271; 4 Caines' Cas. in Error 96; 5 Vesey, Jr. 794, 800.

11. The loss thus incurred by the administrator, fixes a *Devastavit* upon him, for which he is chargeable.

D. J. BAKER and HALL, for the appellee, contended,

1. "Where there is manifest fidelity and ordinary diligence displayed, courts will reluctantly enforce the rigid rules of law." 2 Wheaton's Rep. 32. "An administrator is not answerable if he lend money on security, good at the time, if it fail, or vest it in the funds, and they fail." "If rent be due on a lease, and the tenant become insolvent, and the executor release the rent, and give him a sum of money to quit possession, and in all this, evidently acts for the benefit of the estate, he shall be allowed both." "The principle of this last case will be found to apply to a very great number of cases in which the executor acts *honestly and prudently*, though there be a loss to, or diminution of, the testator's estate or rights." See 1 Dane's Abr. 590, and the authorities there referred to.

"If an executor lend money on real security, which at the time there was no reason to suspect, and afterwards such security prove bad, he shall not be chargeable with any loss any more than he would have been entitled to the produce of it, if it had been sufficient." Toller's Exrs. 481; 1 P. Wm. 141.

"So where A., an executor, paid the assets into the hands of B., his co-executor, with whom the testator was wont to keep cash as his banker, on failure of B., the Court held that A. ought not to suffer for having trusted him whom the testator trusted in his life-time, and at his death appointed one of his executors." *Ibid.* "Generally speaking, although if an executor release or compound a debt, he shall be charged, yet if he appear to have acted for the benefit of the estate, he shall not be charged." Toller's Exrs. 482; 3 P. Wm. 381.

"So, a co-executor who proved, but never acted, having received a bill by post, on account of the estate, and transmitted it immediately to the acting executor, was held not to be responsible for the administration of the property." Toller's Exrs. 486.

As to an executor's vesting money in the funds, or loaning it on security deemed sufficient, and losses accruing to the estate thereby, with which he is not chargeable, see Toller's Exrs. 428. "He has an honest discretion to call in a debt bearing interest, if he conceives it to be in hazard." *Ibid.* "Nor is an adminis-

G*

trator bound to plead the statute of limitations in bar of a demand against the intestate." Toller, 429.

2. Administrations, though they may be trusts coupled with an interest, are in some sense *agencies*, and are more like other *agencies* under our laws than they were formerly under the laws of England, or now are. These trusts, for the purposes of argument, and so far as the present case is considered, may be regarded as agencies with discretionary power. The law is, that " if a discretionary power be allowed to an agent, he is bound to act according to the best of his judgment for the benefit of his employer." 1 Wash. C. C. R. 455.

" A factor is bound to ordinary diligence in relation to the property confided to him; where his orders leave the management of the property to his discretion, he is bound only to good faith and reasonable conduct." 2 Gallis. 13.

SMITH, Justice, delivered the opinion of the Court:

In this case the only question to be determined is the liability of the administrator for the amount of the notes collected of the debtor of the intestate, (who resided in Virginia,) through his agent, and the misapplication of those funds by the agent, after collection. It is contended, by the appellants, that by law an administrator is responsible if his agent embezzle the assets of the estate; and that the funds being used by Tate, who afterwards became insolvent, is equivalent to an embezzlement; and that therefore the administrator, in the present case, is liable. The case cited in support of this principle, and referred to in Toller, and in Dane's Abridgment, is not borne out in the case in 6 Modern, to which they refer. The only question decided by the Court, and the only one before them, was a question of costs; and as the party might in that case, have sued, without describing himself as administrator, it was held he should pay costs. It is admitted, and the facts in this case show, that the administrator has acted prudently and honestly; that his agent at the time he was employed, was a person of reputation and property; and although he became afterwards insolvent, and used the money collected, there is no evidence of negligence on the part of the administrator in the use of the proper means to collect the money of his agent. If an administrator has acted for the benefit of the estate, used proper diligence, and acted with ordinary care and circumspection in the discharge of his trust, he ought not to be held answerable for losses which could not have been foreseen, and which ordinary precaution may not guard against. The general principle which seems to run through all the authorities, as to his liability, recognise the doctrine, that if he acts honestly and prudently, though there be a loss to, or diminution of, the testator's estate or rights, he will not be liable.(1)

(1) 1 Dane's Abridg. 590; Toller's Ex. 481; 1 P. Wms. 141; 3 P. Wms. 381.

Christy and wife *v.* M'Bride.

Where there is manifest fidelity and ordinary diligence displayed, the rigid rules of law will be reluctantly enforced.(1) Another view might be taken of the case : the administrator could not, in his fiduciary character, have sued these notes unless he had taken out letters of administration in Virginia. It no where appears that he did so ; but the case shows, on the contrary, that the debt must have been collected in the name of the agent. Until the administrator had received the money, could it be considered as assets in his hands ? and is he chargeable at all, in his representative character, until this appears ? Whether he would be personally liable under a supposed interference with the collection of debts not warranted by his character of administrator, out of this State, it is not proper now to deter-. mine. But we very much doubt whether he was legally bound to have made the collection of the notes in Virginia; and if not compellable so to do, may not the parties, in the present instance, have mistaken their remedy ?

On a review of the whole case, and considering the powers of the Probate Court to adjust settlements like the present, upon the broad principles of equity, we are of opinion that the Circuit Court did not err in affirming the judgment of the Court of Probate, and that the judgment of the Circuit Court be affirmed with costs.

*Judgment affirmed.*

(1) 2 Wheat. 32.