## BETSY COREY v. CLARK G. COREY.[1]

January 17, 1913.

Nos. 17,870—(130).

**Removal of executor — personal interest against estate.**

Upon a petition by a widow, who had renounced her husband's will, to remove the executor named by the will, on the ground of his personal in-

[1] Reported in 139 N. W. 509.

terest in certain transfers made by the testator in his lifetime and alleged by the petitioner to be invalid, *held,* under the facts, that the establishment of the invalidity of such transfers was not essential to the granting of the relief sought.

**Same — right to impartial representative.**

The fact that the petitioner was the only person who would be benefited by a restoration of the property so transferred *held* not to bar her right to have the matter passed upon by an impartial representative in the first instance, and to have such a person in charge of the estate so long as such matter is in controversy.

Betsy Corey, widow of H. A. Corey, deceased, petitioned the probate court for Winona county that it would require Clark G. Corey to show cause why he should not be removed as executor of the last will and testament of H. A. Corey, deceased. The petition was denied by the probate court, and an appeal from the order refusing to remove the executor was taken by petitioner to the district court for that county. The matter was heard before Snow, J., who made findings and ordered judgment affirming the order of the probate court. From the judgment entered pursuant to the order, Betsy Corey appealed. Reversed, with direction to the district court to enter judgment in accordance with the opinion.

*Brown, Abbott & Somsen,* for appellant.

*Webber & Lees,* for respondent.

PHILIP E. BROWN, J.

Application under R. L. 1905, § 3709, to remove an executor for unsuitableness and for failure to file an inventory. The probate and district courts denied relief, and from the judgment of the latter declaring such determination the petitioner appealed.

The following are the facts:

H. A. Corey and the petitioner intermarried in 1885, and lived together as husband and wife until his death, which occurred in 1911. He died testate, leaving as his heirs his widow, four children, all of whom are the petitioner's stepchildren and all are nonresidents of this state, except Clark G. Corey, and also two grandchildren.

120 M.—20.

. The will was probated in Winona county, and the court appointed the
son Clark executor. He has so conducted the affairs of the estate.
that distribution might be-made, were it not for the disposition by
the deceased in his lifetime of a portion of his property under a trust.
deed and certain donations, to both of which transactions we will
next refer, and also the pendency of this application. The widow
elected not to take under the will. On April 22, 1905, Mr. Corey
and one Wold executed an instrument whereby, for the stated con-
sideration of one dollar and trust and confidence reposed, the former
attempted to assign, grant, bargain, and convey unto the latter and
his successors in trust choses in action and loans amounting to·
$22,600, including notes aggregating $2,000 executed to him by his.
son Clark, in trust for the following uses and purposes, and none·
other:·

1. To take possession of the choses in action and loans, and to·
collect the principal and interest thereon, and annually pay the in-
terest to the deceased and to reinvest the principal in real estate
securities.

2. Upon the death of H. A. Corey, or within such reasonable
time thereafter as might be, consideration being given to the condi-
tion of the loans, to pay the principal sum, together with any interest ·
that might then have accumulated thereon, or, in the ·event that the·
principal and interest should not be due, then to assign the princi-
pal sums and accrued interest to his four children, less expenses re-
maining unpaid, in the following proportions: To Clark G. Corey,.
$5,100, and to each of the other children of the decedent $4,500;.
provided, however, that should Betsy Corey, the decedent's wife,.
not survive him, then the $4,000 payable to her conditionally in the·
"Oliver contract and notes" [which were included in the trust in--
strument] should be paid to the children in equal parts.

3. As to certain notes and mortgages given by the son Clark G.
Corey, also included in the trust agreement, the trustee, or his suc-
cessor, was directed to renew the same from time to time as they
matured, and payment to Clark of the amount assigned by the present.
instrument for his benefit was to be made by indorsement on his.

notes and mortgages aforesaid, satisfying the same to that extent of record.

4. In the event of the death of any of the children, leaving them surviving living issue, the sum payable to them under the trust was to be paid to such issue; but in the event of any of the children dying without leaving surviving living issue, then the sum directed to be paid to such child was to be distributed equally among the survivors of the other children.

5. Upon the death of H. A. Corey, all expenses incident to the trust, then remaining unpaid, were first to be deducted, and the balance of the estate was to be paid to the children pro rata as directed in the trust agreement.

The trustee accepted the trust and promised and agreed to carry out the provisions thereof faithfully and to the best of his ability.

Wold received from Mr. Corey the choses in action and loans mentioned in the trust instrument, managed the same during the remainder of Corey's life, paid over to him while he lived the net income therefrom, and after his death paid over the principal, with accrued interest, to the ultimate beneficiaries named in the trust instrument in the prescribed proportions or amounts. The property so distributed is still retained by the respective recipients thereof; and the executor refuses to inventory the portion received by him, or to account therefor as a part of the estate of the deceased, or to take, for the benefit of the estate or any person interested therein, any steps or proceedings, at law or otherwise, to recover from any of the beneficiaries and recipients any part of the property transferred to them under the instrument.

It appears, furthermore, that in December, 1910, and January, 1911, Corey transferred and assigned directly to the same children, including C. G. Corey, the executor, notes, mortgages, and other securities amounting to the sum of over $5,000, and surrendered up to him and canceled, without consideration, certain promissory notes to the amount of $1,400, which he had theretofore, upon good consideration, executed to the father.

It does not appear that any of the decedent's heirs, excepting the

petitioner, either demands or desires any action to be taken to obtain restoration to the estate of any of the property transferred as above mentioned. There are no creditors whose claims require such restoration, nor is the same necessary for the payment of the expenses of administration or for the payment of any legacy bequeathed by the will; and the petitioner's application is made purely in her own interest, and not for the general benefit of the estate, for the purpose of increasing the share of the estate which may come to her by reason of her renunciation of the will, and her demand for the removal of the present executor is to subserve that purpose, and, if granted, will effect no benefit to any other person interested in the estate.

The foregoing constitutes the substance of the court's findings of fact, which are unchallenged. In addition thereto, it appeared that the estate of the deceased inventories, including the widow's allowances, less than $10,000.

The district court denied the application of the petitioner on the sole ground that she had the right to institute and prosecute an action in her own name to test the validity of the trust and donations, and for the reason that, as such action, if successful, would redound to her advantage alone, it was but fair and equitable that she individually should meet and defray the necessary expenses thereof. The court was of the opinion, however, as indicated by its memorandum, that if the petitioner was entitled to have an action brought by a representative of the estate to test the validity of the trust and the gifts in question, then this executor would be an unsuitable plaintiff to prosecute an action either against himself or his brothers or sisters. Counsel for the respondent frankly so conceded on the oral argument, and to this we agree.

1. The respondent contends that the trust agreement and the donations assailed by the petitioner were both valid and unassailable in this proceeding or any other, and that in any event no showing was made below of their invalidity. The lower court was of the opinion that such questions were not material in this proceeding, and neither was adjudicated below. But the question nevertheless arises, where an action must be brought or alleged rights abandoned, as to what

showing one interested in an estate must make of the existence of a cause of action in favor of the estate in order to warrant a holding that a representative is unsuitable to retain his position as such, when it appears, as it does in this case, that, if a right of action does exist, then that there is such antagonism of interest on the part of the administrator as to disqualify him to act in the premises. This question is so intermingled with the general question of suitableness that we will cite some of the authorities covering both questions which, we think, state true views.

In Putney v. Fletcher, 148 Mass. 247, 19 N. E. 370, it was declared that an executor or administrator is deemed unsuitable when he has any conflicting personal interest which prevents him from doing his duty, and that where the estate has been represented to be insolvent, and there is reasonable ground to believe that a conveyance of land made by the deceased was fraudulent, creditors have the right to insist that the representative of the estate try the question. In the case of In re Estate of Mills, 22 Or. 210, 29 Pac. 443, which involved the removal of an administrator, the court said:

"It is apparent, from the mere statement of the claims of the petitioner and the administrator, that there is a direct conflict of interest between the estate and" the administrator, "and that he cannot act indifferently in the matter. An administrator stands in the position, so to speak, of a trustee, and should be a person who can and will carefully guard the interests of the estate, and at least stand indifferent between it and claimants to the property. This" the administrator "cannot do; and he must necessarily, if allowed to act as administrator, sacrifice the interests of the estate, if any, in this property, or his own interests, and it is expecting too much of human nature to assume the latter."

In that case the administrator claimed to have purchased certain lands, while the petitioner claimed that no such purchase had been made, and the court further said:

"We do not concede this to be a proper proceeding in which to try the question of the title to this property, and therefore do not express

or indicate any opinion thereon; nor as a fact have we examined the testimony further than to see that there is a real and substantial controversy, and one which must be tried in the proper forum, the estate being represented by some person as administrator who is in a position to assert its rights, if any. It is sufficient for us to know that the interests of" the administrator "as an individual and as administrator are so antagonistic that they cannot be represented by the same person."

See, also, in this connection, Marks v. Coats, 37 Or. 609, 62 Pac. 488; In re Wallace, 68 App. Div. 649, 74 N. Y. Supp. 33.

We think it clear that one interested in an estate has the right to have its representative wholly free from conflicting personal interests, so that, when the question arises as to the necessity or propriety of a judicial investigation concerning the existence of uninventoried assets, such question may be determined in the first instance by one entirely free from adverse interests or partiality. Moreover, at least where, as is the case here, no suggestion is made of the assertion of a sham claim in favor of the estate, it is necessary for the petitioner to establish only what has been done, namely, that there is a real and substantial controversy. To hold that the petitioner must establish the claim which he seeks to have enforced by the representative would make his rights depend, not upon the fact of their existence, but upon his ability to establish them in a collateral proceeding. The futility of such a rule is apparent, when we consider that the determination so made would not establish a personal liability on the part of any one, and would adjudicate no property right, but merely constitute a finding of facts as a foundation for the removal of the representative. It would compel the petitioner to expose his entire case to his adversary in a matter essentially preliminary. In the instant case we think the lower court was right in declaring that the question of the actual validity of the claims asserted by the petitioner was not properly determinable in this proceeding.

We do not mean, however, that the court should remove an executor upon slight or flimsy grounds, for he is the choice of the deceased to execute the will and to be its champion; but he must be the unbiased

representative of all persons interested in the estate, and remain neutral between them, and while no rule of universal applicability can safely be formulated to govern removals, it being necessary that each case should rest upon its own facts, yet in the instant case we think it clear that the interest of the executor in the subject-matter of the claims asserted by the petitioner is such that it would be wholly improper, in fairness to him, as well as to the petitioner, to require or permit him to pass upon the propriety of taking any steps concerning the petitioner's demand for the enforcement of the claims which she asserts.

An illustrative incident indicative of the correctness of this conclusion appears in the record. Subsequently to the appeal from the probate court to the district court, the executor made application for partial distribution; and when it is remembered that three of the beneficiaries of the trust which she attacks are nonresidents, and that the executor testified that they had no property in this state so far as he knew, outside of their interest in the estate, the action of the executor in seeking distribution is significant, though, indeed, it may accord with an honest intent.

2. The respondent, however, contends that, even if the petitioner's attack upon the transfers here involved be well grounded, yet that, since she is the only person who will be benefited by a restoration, her claims are not such as should be litigated by the estate, with the incidents of liability for costs, etc., but that they should be prosecuted by the petitioner in her own name and at her own expense, and that therefore the unsuitableness of the respondent to pass upon or prosecute them is entirely immaterial. But in First Nat. Bank of Boston v. Towle, 118 Minn. 514, 137 N. W. 291, a similiar contention made by the executor met with disapproval, and we have been cited to, and have ourselves found, no authority supporting the respondent's position. McCord v. Knowlton, 79 Minn. 299, 82 N. W. 589, held merely that the remedy given to the executor or administrator by what is, substantially, now R. L. 1905, § 3720, was cumulative, and did not deprive a creditor of the right himself to pursue the property sought to be subjected to his claim, and the other cases cited by the respond-

ent in this connection are to the same effect, all, moreover, involving the claims of creditors.

These cases, if in point at all in the instant case, tend merely to establish the right of the petitioner to enforce the claims asserted by her in her own name and behalf, which for the purposes of this case we may concede; and, aside from the fact that she is a beneficiary, and not a creditor, her petition here involves something more than the question as to who will or shall be compelled to bring the suit, if one is to be brought, for, as we have already stated, she has the right to have the propriety of the institution of an action passed upon by an unbiased representative in the first instance.

Moreover, we are averse to holding that a person shall be deprived of a remedy because perchance, a different one may also exist. The serious difficulty of reaching just results under the administration of the common law was not so much because of the imperfection of its remedies, as its paucity of remedies, which latter defect gave rise to the establishment of equity jurisprudence, with its remedial elasticity. We have no disposition to turn the clock backward. The denial of a remedy, because it is claimed another and more appropriate one exists, frequently results in the deprivation of a right. Can we hold with the respondent's contention, and be just to the petitioner? Is it fair to her that this executor should be left in charge of the estate and in possession of the papers of the deceased, while she personally conducts litigation against the preferred heirs? Must she combat the executor individually and also as executor? Will he be impartial as executor while such litigation is going on? Is a representative of the estate of a decedent to be allowed to meet a charge of failure to perform his statutory duties preferred by an heir, by an assertion that the heir has some other remedy?

It appears that the executor has already attempted, since this litigation was commenced, to have partial distribution. We have already adverted to this in the first subdivision of this opinion, but it is also of prime significance here. Two of the preferred heirs reside in Oregon, and one in Colorado. None of them has property in this state, so far as the executor knows, except their interest in the estate. It may be that the only chance the petitioner has ultimately to obtain relief against these absentees is by way of impounding their interest in the

estate. Neither are we disposed to compel the petitioner to seek the enforcement of her alleged rights against these heirs at their domicil. It should be an exceptional case, indeed, where a widow, under circumstances similar to those here disclosed, will be compelled to seek at her own expense the recovery of that which the law gives as her share of the estate, when under our laws the duty of reducing the assets to possession devolves upon the representative, and it is contemplated that the widow shall receive her portion without affirmative action on her part.

The suggestion, found in the memorandum of the district court, that if the respondent were to be removed and some other person appointed in his place, the latter "might prove refractory likewise," is not here in point. The possibility referred to is too remote to have weight, and, furthermore, cannot affect the petitioner's right to demand that the proper attempt should be made to obtain an impartial representative. We might also add that, if necessary, the probate court would have power to compel action in the event that the unwillingness of the substituted representative were not deemed such as to require his removal also.

Judgment reversed, with direction to the district court to proceed to enter judgment in harmony with the views herein expressed.