In the Matter of the ESTATE OF Leona CUTLER, Deceased;

Kathryn M. Colmey and Mary Elizabeth Cutler, Appellants.

No. 84–88.

Court of Appeals of Iowa.

March 26, 1985.

R. John Swanson of Swanson, Boeye & Bloom, Red Oak, for appellants.

Philip Willson of Smith, Peterson, Beckman & Willson, Council Bluffs; Howard Wenger of Wenger Law Office, Hamburg; and Ivan D. Wilson of Wilson & Wilson, Shenandoah, for appellee, R.H. Henstorf.

Heard by OXBERGER, C.J., and SNELL and SCHLEGEL, JJ.

SNELL, Judge.

This appeal queries whether an executor can be removed for acts done prior to his appointment where there is no claim of malfeasance as executor. R.H. Henstorf was appointed executor for the Estate of Leona Cutler on July 11, 1983. He had also served as executor for the estate of her husband, Otway W. Cutler, who died on November 26, 1975. Leona Cutler was the sole beneficiary under her husband's will.

From the date of Otway Cutler's death, Henstorf helped Leona Cutler with her financial affairs. He went to see her two, three, or four times a week, bringing her cash from the bank and picking up checks from her for deposit. He paid her telephone bills, utility bills, and her nursing home bills after 1979 when she moved there. From January 1980 until she died on July 5, 1983 at age 95, Henstorf wrote all of the checks on Leona Cutler's bank account.

Henstorf also helped her with her federal income tax returns. He had his nephew prepare the returns for 1979 through 1982, which Henstorf signed because Leona Cutler refused to do so. The returns contained an exemption claim for being blind.

Shortly after Otway Cutler died in 1975, Leona Cutler gave Henstorf written authority to enter her safety deposit box at the bank. In the box she kept among other things, her certificates of deposit. She also gave him a written power of attorney dated June 30, 1980,

> to handle my bank accounts, checking and savings. To make deposits and withdrawals. To pay all of my debts and collect any and all funds of every kind and description that may be owing me. To handle any bond and stock accounts that I may have and to keep my funds invested in bank or federal securities.
>
> \* \* \* \* \* \*
>
> I do hereby grant to my attorney-in-fact the right to do and carry on all of my business the same as I myself might do, I having complete confidence in his ability and integrity.

R.H. Henstorf's occupation since 1962 has been as president of the First National Bank of Farragut, Iowa. He owns 90 bank shares of 300 outstanding. Together with his wife, his brother and his wife, they own 193 shares. He is a member of the board of directors, which is comprised of himself, his wife, his brother and his wife, and three others. His responsibilities as president of the bank include making investments.

Kathryn M. Colmey and Mary Elizabeth Cutler are nieces of Otway Cutler and are the sole residuary legatees of Leona Cutler. Both are non-residents and knew little about Leona Cutler's financial affairs. After she died, they learned the estate was estimated at $500,000 net. Of this amount, they found that $131,000 was deposited in a non-interest-bearing checking account in the First National Bank of Farragut, Iowa. This account was maintained at $100,000 or more for the seventeen months prior to Leona Cutler's death, except for one four-day period when it dropped to $98,500. From July 1, 1980, when Henstorf received the written power of attorney, to February 1, 1982, this account balance ranged from a monthly low balance of $82,000 to $113,000, excepting only the month of October 1980 ($58,000) and the month of April 1981 ($79,-

000). After being appointed executor, Henstorf transferred this money in the non-interest-bearing checking account into a hi-fi (interest-bearing) checking account.

Nieces Colmey and Cutler also discovered that certificates of deposit in the First National Bank of Farragut had paid a low rate of interest during this period. A $42,000 CD purchased March 7, 1979, by Henstorf paid interest at 6% per annum each year until March 7, 1983. A $20,000 CD that he purchased on July 26, 1978, paid 6% per annum each year until July 26, 1981.

Colmey and Cutler brought this action as residuary beneficiaries to remove Henstorf as executor alleging mismanagement of decedent's financial affairs and that a claim for compensatory and punitive damages exists by the estate against Henstorf. They assert that a conflict of interest is present, that their rights as beneficiaries will be jeopardized unless Henstorf is removed, and that they should be appointed in his stead.

The trial court found that all of the appellants' allegations of wrongdoing related to periods of time prior to the executor's appointment. No evidence was presented that the duties of executor have not been properly carried out. Changing executors would needlessly increase the costs of administration and was unnecessary to protect the interests of the estate. The trial court accordingly held that grounds for removal under sections 633.65 or 633.63 were not proved and denied the petition for removal. The court then appointed appellants as temporary administrators to investigate and file suit on any claim against R.H. Henstorf and the First National Bank of Farragut.

We consider this matter as an action in equity, reviewable de novo. Iowa R.App.P. 4; *In re Estate of Lovell,* 344 N.W.2d 576, 577 (Iowa Ct.App.1983).

The Iowa statutory provision for removal of a fiduciary states:

When any fiduciary is, or becomes, disqualified under sections 633.63 and 633.64, has mismanaged the estate, failed to perform any duty imposed by law, or by

any lawful order of court, or ceases to be a resident of the state, then the court may remove him. The court may upon its own motion, and shall upon the filing of a verified petition by any person interested in the estate, including a surety on the fiduciary's bond, order the fiduciary to appear and show cause why he should not be removed. Any such petition shall specify the grounds of complaint. The removal of a fiduciary after letters are duly issued to him shall not invalidate his official acts performed prior to removal.

Iowa Code § 633.65 (1983). The reference to section 633.63 incorporates the statutory qualification requirements for serving as a fiduciary. Subsection 1 provides:

1. Any natural person of full age, who is a resident of this state, is qualified to serve as a fiduciary, except the following:

a. One who is a mental retardate, mentally ill, a chronic alcoholic, or a spendthrift.

b. Any other person whom the court determines to be unsuitable.

Iowa Code § 633.63(1)(a) and (b) (1983). The ground for removal here asserted is that the executor, in the language of the statutes, "is, or becomes, disqualified under section 633.63" because he is determined to be "unsuitable."

It is apparent from the court's pretrial comments and from its conclusions of law that these statutes were construed to authorize removal only upon proof of an executor's unsuitability while performing the duties of executor without regard to acts done prior to his appointment. This was an error of law. Section 633.65 allows removal of an executor who "is disqualified" because he is unsuitable as well as one who "becomes disqualified" because he is unsuitable. An executor cannot become disqualified until after he is appointed. The legislature's use of the words "is disqualified" must therefore refer to acts done before appointment that are sufficient for disqualification after appointment. Moreover, it is logically sound to judge an

executor's suitability for remaining in office by the same statutory standards under which he was appointed. We perceive no good reason to permit an executor to anchor himself in office by merely floating by any meaningful examination of his suitability at the time of appointment. To do so is to put an unintended premium on the initial appointment of an executor, which is often done perfunctorily and expeditiously. We therefore review the evidence of this executor's past acts to determine if he was suitable for appointment as executor initially.

The question of suitability of a fiduciary has been addressed by other courts. In *In re Zartner's Will*, 183 Wis. 506, 198 N.W. 363 (1924), the court removed an executor as "unsuitable" under a statute providing:

> or shall ... become insane or otherwise incapable or unsuitable to discharge the trust, the county court may remove such executor.

*Id.* at 509, 198 N.W. at 364. In that case, the argument was made that because the statute does not provide for removal for conduct prior to the appointment by the testator, and because all of the misconduct occurred before the execution of the will, there could be no valid removal. The court rejected this argument notwithstanding the lack of statutory reference to prior acts. The act of wrongdoing by the executor was in selling decedent's real estate to himself through various strawmen prior to decedent's death. In removing the executor, the court said:

> Even if the distributees could maintain an action against the executor, it does not follow that the executor should be retained in office. His plain duty would be to conserve the estate. His personal interest would demand that the claim of the estate against himself be defeated. Under such conditions he could not faithfully serve two masters. There would undoubtedly exist such a conflict of interest and such hostility as would interfere with the proper administration of the estate.

*Zartner*, 183 Wis. at 515, 198 N.W. at 367. In another case, *Fountain v. Cabe*, 242 Ga.

787, 251 S.E.2d 529 (1978), evidence was presented that the executor, acting under a power of attorney during decedent's lifetime, had been unfaithful to his trust. "The evidence of the [executor's] acts and doings while attorney-in-fact for the testatrix prior to her demise ... were relevant to his qualification to serve as executor." *Id.* at 788, 242 Ga. at 530.

The question of suitability is not restricted to whether an executor is competent. In *In re Holterman's Estate*, 203 Minn. 519, 282 N.W. 132 (1938), the court approved the denial of a guardian's application for appointment as executor for the following reasons:

> In short, litigation was pending between Mr. Westcott and the estate. Pro tanto he was put in a position hostile to the legatees. What is more, the trial judge, although he did not say so explicitly, may have considered that there was in consequence an ill will between Mr. Westcott and the legatees which, put along side the former's adverse interest, made a case of unsuitability.

*Id.* at 520–21, 282 N.W. 133.

The word "unsuitable" has been defined as "not suitable or fitting, unbecoming, inappropriate." Websters Third New International Dictionary 2512 (1971). In examining the executor's past acts to see if he is unsuitable to be executor of this estate, we do not find it necessary that criminal or civil liability be proved. This is not the proper forum for a determination of that nature. In the case of *In re Estate of Mills*, 22 Ore. 210, 29 P. 443 (1892), which involved the removal of an administrator, the court said:

> We do not concede this to be a proper proceeding in which to try the question of the title to the property, and therefore do not express or indicate any opinion thereon; nor as a fact have we examined the testimony, further than to see that there is a real and substantial controversy, and one which must be tried in the proper forum, the estate being represented by some person as administrator who is in a position to assert its rights if any.

It is sufficient for us to know that the interests of the administrator as an individual and as administrator are so antagonistic that they cannot be represented by the same person.

*Id.* at 212, 29 P. at 444. Similarly, the Minnesota court in a removal case declared: "In the instant case we think the lower court was right in declaring that the question of the actual validity of the claims asserted by the petitioner was not properly determinable in this proceeding." *Corey v. Corey*, 120 Minn. 304, 310, 139 N.W. 509, 511 (1913).

In *Quincy Trust Co. v. Taylor*, 317 Mass. 195, 57 N.E.2d 573 (1944), the court describes "unsuitable" in these terms:

The statutory word "unsuitable" gives wide discretion to a probate judge. Past maladministration of a comparable trust ... warrants a finding that an executor or administrator is unsuitable. Such a finding may also be based upon the existence of an interest in conflict with his duty, or a mental attitude toward his duty or toward some person interested in the estate that creates reasonable doubt whether the executor or administrator will act honorably, intelligently, efficiently, promptly, fairly and dispassionately in his trust. It may also be based upon any other ground for believing that his continuance in office will be likely to render the execution of the will or the administration of the estate difficult, inefficient or unduly protracted. Actual dereliction in duty need not be shown.

*Id.* at 196–97, 57 N.E.2d at 574.

The Indiana court agreed in *Matter of Estate of Baird*, 408 N.E.2d 1323 (Ind.App. 1980):

In reviewing the determination of a person's suitability to serve as executor, other appellate courts have held the trial court should carefully inquire into the person's character, integrity, soundness of judgment, general capacity, possible conflicts of interest, as well as additionally consider the special conditions of the estate and those interested therein— creditors, legatees, and next of kin. . . .

The Massachusetts Supreme Court described unsuitability as "not [being] restricted to instances of absolute unfitness but [as] including an unfitness arising out of the situation of the person in connection with the estate". . . . Unsuitableness of one to act as a fiduciary may exist although actual misconduct or dereliction of duty is not shown. . . .

*Id.* at 1327–28.

Section 633.65 grants discretionary power of removal to the trial court. "In matters of this kind, the trial court must necessarily be allowed to exercise a large discretion and, unless discretion was abused, should not be interferred with by this court." *Matter of Estate of Fisher*, 344 N.W.2d 576, 579 (Iowa App.1983), *quoting In re Estate of Lininger*, 230 Iowa 201, 205, 297 N.W. 310, 312 (1941).

The evidence in this case of investments in non-interest-bearing and low interest bearing accounts of Leona Cutler before she died came from the testimony of the executor, Henstorf, and from the records of the First National Bank of Farragut. Henstorf also testified that during this period from 1979 through 1983 the money market rates ranged from 9% to 16½%. His bank paid 14% during some of this time. This evidence shows without refutation that a substantial loss of income was thereby sustained by Leona Cutler and by her estate. It is also clear that Henstorf profited from this occurrence through his position as bank president and majority stockholder.

Henstorf testified that Leona Cutler had faith in his loyalty to her, trusted him, had complete confidence in him, relied on his skills and talents, and had great belief in his integrity. She put her convictions in writing in 1980 by giving him a broad power of attorney. In it she directed him "to keep my funds invested in bank or federal securities. . . . I having complete confidence in his ability and integrity." The term "invest" is defined "to commit (money) for a long period in order to earn financial return." Websters Third New International Dictionary 1189 (1971). It is obvious

that Henstorf wholly failed to carry out this trust when he kept large amounts of money for years on deposit in an account that earned nothing. Only slightly better were the investments in 6% interest-bearing securities when his own bank was paying from 9% to 14%. No explanation for these actions was given by Henstorf. Although not raised here, the model prudent person investment act may also apply. *See* § 633.123 (1983).

In *Putney v. Fletcher*, 148 Mass. 247, 19 N.E. 370 (1889), it was declared that an executor is deemed unsuitable when he has any conflicting personal interest which prevents him from doing his duty. *Id.* at 248, 19 N.E. at 370–71. The Minnesota court agreed in saying, "We think it clear that one interested in an estate has the right to have its representative wholly free from conflicting personal interests...." *Corey v. Corey*, 120 Minn. 304, 310, 139 N.W. 509, 511 (1913); *see also Bell v. Riggs*, 34 Okla. 834, 843, 127 P. 427, 431 (1912).

Henstorf's handling of Leona Cutler's financial affairs was tainted either by his gross inattention or by his advancing personal welfare. In either case, the trust reposed in him was ignored or abandoned. The loss to those who trusted him is substantial and irreparable.

The trial court did not reach the question here discussed. Our review, however, convinces us that had the facts been known at the time of appointment, Henstorf would not have been appointed executor. We find the evidence is sufficient to support a finding of unsuitability to serve as executor of this estate. We further hold that it would be an abuse of discretion not to remove him.

The trial court appointed appellants as temporary administrators for the purpose of allowing them to pursue any claims they have against Henstorf and the First National Bank of Farragut. In light of our conclusion, we find this would not be a sufficient remedy to avert removal of the executor. Appellants are entitled to have their interests in the estate proceedings represented by someone independent of the conflicts of interest apparent here. We remand for the trial court's appointment of a new executor.

REVERSED AND REMANDED.