RUTH RAMSDELL ET AL. *v.* UNION TRUST COMPANY, EXECUTOR (ESTATE OF EDNA M. SWAYZE) (12700)

PETERS, C. J., SHEA, DANNEHY, CALLAHAN and BRENNEMAN, Js.

Argued November 13, 1986—decision released January 13, 1987

*David M. Reilly,* for the appellants-appellees (plaintiffs).

*Robert W. Allen,* for the appellee-appellant (defendant).

PETERS, C. J. The dispositive issue on this appeal is whether a conflict of interest warranted the removal of the defendant, the Union Trust Company, from its position as executor of the plaintiffs' decedent's estate. The plaintiffs are beneficiaries under the will of the decedent, Edna M. Swayze. In 1977, the year of Swayze's death, the plaintiffs petitioned the Probate Court to remove the defendant as executor of Swayze's estate and to deny approval of the defendant's inventory of the estate. The court denied the petitions, and the plaintiffs appealed. In 1982, the plaintiffs instituted a third appeal from a subsequent Probate Court order approving the defendant's final account as executor. All of the plaintiffs' appeals alleged misfeasance by

the defendant in its dual capacity as executor of the Swayze estate and as trustee of an inter vivos trust created by Swayze some six years before her death. The appeals were consolidated for trial. The trial court, *S. Freedman, J.,* rendered judgment for the defendant on the first two appeals, which related to the removal of the defendant as executor and the adequacy of the estate inventory. On the third appeal, however, it rendered judgment for the plaintiffs, and refused to accept the defendant's final account. The plaintiffs appealed to this court from all three judgments, and the defendants cross appealed from the judgment on the third appeal. We find error in the plaintiffs' appeal of the trial court judgments.

The facts of this case are undisputed. On February 1, 1971, Edna M. Swayze, as grantor, established a revocable inter vivos trust (the trust) with a corpus of approximately $365,000. The trust named the defendant and R. Schuyler Goodwin as trustees.[1] The trust directed the trustees to make periodic payments of income "to or for the benefit of" the grantor during her life, and gave the grantor the option to direct the payment of additional sums from interest or principal to herself or another party of her election.[2] The trust

[1] The defendant was also the administrator of a life estate under the will of Frank Swayze, Edna Swayze's late husband, from which Edna Swayze received income. The defendant's conduct in the administration of the life estate is not at issue in this litigation.

[2] The trust provided in relevant part:

"1. The Trustees shall pay the net income to or for the benefit of the Grantor quarterly or oftener so long as she shall live.

"2. The Trustees shall pay from the income or the principal of the Trust any amount or amounts that the Grantor may direct, such persons, corporations or associations as the Grantor may direct, and the Trustees shall transfer to the Grantor any asset or assets of the Trust at any time upon the Grantor's request.

"3. In the event of accident or illness, or in the event the Grantor is not easily available, the Trustees are authorized in their discretion to make payments from income or principal from time to time for the benefit of the Grantor including payments for her living expenses and care."

also provided: "In the event of accident or illness, or in the event the Grantor is not easily available, the Trustees are authorized in their discretion to make payments from income or principal from time to time for the benefit of the Grantor including payments for her living expenses and care."

On July 23, 1971, the New Haven Probate Court adjudged Swayze incompetent. That court appointed Herbert W. Newton conservator of her estate. Newton obtained a $10,000 bond and, pursuant to General Statutes § 45-75, filed an inventory of the Swayze estate with the Probate Court. The inventory listed personal property in the amount of $28,527.57, but did not list the trust as an asset.

From 1971 through 1976, the defendant, as trustee, paid income and principal to Newton, as conservator, upon Newton's oral requests for funds to an officer of the defendant. The trustees never sought permission from the Probate Court to make payments from the trust to Newton, nor did they inform the Probate Court of those payments. Newton provided no regular receipts for expenses purportedly incurred on Swayze's behalf, and did not account to the trustees for his use of the money received from the trust. The record does not indicate that the trustees ever investigated Newton's use of the trust funds. During Newton's tenure as conservator, the trustees paid him approximately $360,000 from the trust. The New Haven Probate Court removed Newton as conservator, effective January 17, 1977, because of his failure to provide the court with an acceptable accounting of his expenditures.

Swayze died on February 8, 1977. Pursuant to the terms of her will, the defendant was appointed executor of Swayze's estate on February 24, 1977. On August 3, 1977, the plaintiff Ruth N. Ramsdell filed an

application with the Guilford Probate Court to remove the defendant as executor, alleging as grounds for removal, inter alia, a conflict of interest between the defendant's role as executor under the will and as trustee of the inter vivos trust. Following a hearing, the Probate Court denied the application on September 8, 1977.

The defendant's original inventory of the Swayze estate listed as an estate asset a claim of undetermined amount against Newton, the former conservator. After the plaintiffs objected to the Probate Court's acceptance of the inventory, arguing that the defendant had failed to include a claim against the trustees of the inter vivos trust, the defendant amended its inventory to list "a possible secondary claim" against the trustees. The Guilford Probate Court accepted the amended inventory on August 10, 1977. The plaintiffs appealed the Probate Court's refusal to remove the executor and its acceptance of the amended inventory, and also appealed the court's subsequent order approving the defendant's final account as executor.

While the plaintiffs' appeals were pending, the defendant, as executor, sued Newton in Superior Court seeking, inter alia, an accounting of his expenditures as conservator. On December 4, 1980, the trial court in that action, *Pastore, J.*, rendered judgment against Newton for a total of $69,792.40, an amount which included interest accruing from the date of Newton's removal as conservator to the date of judgment. The executor collected all but $2593.40.

On February 1, 1985, following a trial on the plaintiffs' consolidated appeals from probate, the trial court, *S. Freedman, J.*, rendered judgment dismissing the plaintiffs' appeals from the Probate Court's acceptance of the inventory and refusal to remove the defendant

as executor, but sustaining the appeal from the acceptance of the defendant's final account. In its memorandum of decision, the court determined that, because it was hearing the matter de novo as a Probate Court, it lacked jurisdiction to consider claims for damages and equitable relief raised in the plaintiffs' appeals. It held, accordingly, that those claims should be brought in a court of general jurisdiction. The court, however, undertook a limited inquiry into the plaintiffs' claims that the defendant was liable for negligence in the administration of the inter vivos trust. The court undertook this inquiry for the sole purpose of determining whether reasonable grounds existed for the plaintiffs to sue the defendant in a court of general jurisdiction. After examining the terms of the trust instrument, the court concluded that such reasonable grounds did exist, and accordingly refused to accept the defendant's final account pending resolution of the plaintiffs' claims against the defendant in a court of general jurisdiction. The court also determined that the defendant's status as trustee placed it in a position of "potential conflict" with its duties as executor. The court refused, however, to remove the defendant as executor, reasoning that the parties ultimately might reconcile their differences and that "the weight of authority" favored permitting the executor to remain in office.

On appeal to this court, the plaintiffs claim that the trial court erred in: (1) failing to remove the defendant as executor; (2) approving the defendant's inventory of the Swayze estate, despite the defendant's failure to include in the inventory an appraisal of the claim against the trustees of the inter vivos trust; and (3) failing to surcharge the defendant as executor for litigation expenses incurred by the estate, which expenses allegedly resulted from the defendant's negligence and misfeasance in connection with its duties as

trustee. We agree with the plaintiffs' first claim of error, and will address their additional claims in that light.[3]

The defendant, as cross appellant, claims that the trial court erred in refusing to accept the final account of the defendant as executor, pending resolution of the plaintiffs' claims against the defendant in a court of general jurisdiction. We disagree.

# I

We turn first to the resolution of the plaintiffs' dispositive claim of error, that the trial court erred in refusing to order the removal of the defendant as executor, despite explicitly recognizing the possibility of a conflict of interest between the defendant's role as executor under the will and as trustee of the inter vivos trust. The defendant does not dispute that both the Probate Court and the trial court on appeal have jurisdiction to order the removal of an executor. General Statutes § 45-263 (a); 2 W. Locke & P. Kohn, Connecticut Probate Practice (1951) § 341; see *Prince* v. *Sheffield,* 158 Conn. 286, 295, 259 A.2d 621 (1969). Rather, the defendant argues that removal is not warranted in this case because, despite its dual and potentially conflicting roles as executor and trustee, its conduct as executor was marked by the diligence and

---

[3] The parties do not dispute that the trial court rendered final, appealable judgments in the probate appeals. This is not a case where the trial court's disposition of the case expressly requires further proceedings in another forum before a final disposition is reached. Cf. *Schwarzchild* v. *Martin,* 191 Conn. 316, 325, 464 A.2d 774 (1983) (order requiring arbitration not a final judgment); *Burdick* v. *United States Finishing Co.,* 128 Conn. 284, 288–89, 22 A.2d 629 (1941) (judgment requiring remand to workmens' compensation commissioner not final). In the present case, while the trial court's refusal to accept the defendant's final account does contemplate the possibility of future litigation between the parties, it does not require such litigation as a necessary step in the disposition of the case. The judgments rendered by the trial court were as final as the court, in view of its limited jurisdiction on a probate appeal, was able to render.

prudence required of a fiduciary. In particular, the defendant argues that it acted prudently in failing to pursue a claim against itself and the other trustee, since such an action would have been costly and probably fruitless. While the posture of this case does not require us to resolve definitively the matter of the defendant's potential liability to the estate, we are not persuaded that the defendant's dual roles as executor and trustee did not impair the performance of its fiduciary responsibilities as executor.

General Statutes § 45-263 (a) provides that the Probate Court, upon its own motion or upon the application of an interested party or a surety upon the fiduciary's bond, may remove a fiduciary who "becomes incapable of executing his trust, neglects to perform the duties of his trust, wastes the estate in his charge, or fails to furnish any additional or substitute probate bond ordered by the court . . . . '' The term "fiduciary" in § 45-263 (a) includes the executor or administrator of an estate. General Statutes § 45-249a.

In the present case, there is no claim that the defendant failed to furnish any required bond. Nor do the plaintiffs claim, in their arguments in support of removal, that the defendant has wasted the assets of the estate. Thus, in order to justify removing the defendant as executor under General Statutes § 45-263 (a), the trial court was bound to consider whether, because of its dual roles as executor and trustee, the defendant became incapable of executing its fiduciary duties or neglected to perform those duties in its capacity as executor.[4]

---

[4] General Statutes § 45-203 provides that an executor's failure to file an inventory and appraisal of the estate in its charge may also be grounds for removal. While the plaintiffs acknowledge that the executor's amended inventory did list a possible contingent claim against the trustees, they argue, as grounds for removal in this case, that the defendant failed to appraise this claim properly in the inventory. We agree with the trial court that

Whether grounds exist for an executor's removal is a question addressed to the sound discretion of the Probate Court. *Peck* v. *Searle,* 117 Conn. 573, 583, 169 A. 602 (1933); 2 W. Locke & P. Kohn, supra. On appeal from probate, the trial court may exercise the same discretion de novo, reviewing the facts relating to the propriety of removal without regard to the Probate Court's decision. *Prince* v. *Sheffield,* supra, 298–99. Our task, then, is to determine whether the trial court abused its discretion in refusing to remove the defendant as executor of the Swayze estate.

An important aspect of an executor's fiduciary responsibility is the duty to maintain an undivided loyalty to the estate. *Corey* v. *Corey,* 120 Minn. 304, 310, 139 N.W. 509 (1913); *In re Estate of Rothko,* 84 Misc. 2d 830, 847–48, 379 N.Y.S.2d 923 (1975); *Estate of Stephenson,* 469 Pa. 128, 141, 364 A.2d 1301 (1976); see *Phillips* v. *Moeller,* 148 Conn. 361, 369, 170 A.2d 897 (1961). "[O]ne interested in an estate has the right to have its representative wholly free from conflicting personal interests . . . . " *Corey* v. *Corey,* supra. When the executor of an estate places itself in a position where its interests conflict with those of the estate, the executor's ability to represent fairly the interests of the estate is irreparably tainted. "When [such] a situation appears . . . it is the positive duty of the court to remove the executor . . . . " *Davis* v. *Roberts,* 206 Mo. App. 125, 129, 226 S.W. 662 (1920).

In the present case, as the trial court found, the defendant's potential conflict of interest arises from

the defendant's failure to place a value upon the contingent claim against the trustee did not render the inventory defective, since the value of such a claim was not and has not been established. See *Atwater* v. *Barnes,* 21 Conn. 237, 243 (1851). Because the trial court did not approve the defendant's final account, and because our disposition of this case will require the appointment of a successor fiduciary, an appraisal of the potential claims against the defendant, as trustee or executor, may properly be included in that fiduciary's inventory.

its dual roles as executor under the will and trustee of the inter vivos trust. If the estate has a viable claim against the trustees, the defendant has a fiduciary duty to bring such a claim on the estate's behalf. See *Butler* v. *Sisson,* 49 Conn. 580, 588 (1882). Similarly, if the estate once had a viable claim against the trustees which would now fail because of the expiration of the statute of limitations,[5] the defendant as executor might be liable to the estate for failing to prosecute such a claim in a timely fashion. In either case, the defendant has a conflict of interest with the estate. It cannot effectively perform its fiduciary duty of objectively appraising, and, if necessary, prosecuting, claims against itself which constitute potential assets of the estate. See *Butler* v. *Sisson,* supra. If valid grounds exist for bringing a claim against the defendant, in its capacity as trustee or executor, and the defendant, because of its conflict of interest, refuses to pursue such claims, the defendant is incapable of executing its fiduciary duties and should be removed. See General Statutes § 45-263 (a); *In re Estate of Lucas,* 38 Ill. App. 3d 1009, 1013–14, 363 N.E.2d 621 (1977); *Corey* v. *Corey,* supra.

The existence of a potential conflict of interest does not, of itself, mandate removal of the defendant as executor. Removal of an executor is an extraordinary remedy designed to protect against harm caused by the continuing depletion or mismanagement of an estate. *Carroll* v. *Arnold,* 107 Conn. 535, 542, 141 A. 657 (1928); see *Phillips* v. *Moeller,* supra, 368; *Murdoch*

---

[5] As the trial court noted, the statute of limitations now appears to bar an action by the executor against the trustees. See General Statutes § 52-577. It is unclear from the record whether such a suit could nevertheless be brought on the ground that the defendant, in its capacity as trustee, waived the benefit of the statute of limitations. We need not resolve this issue, because our disposition of this case requires the appointment of a new executor, who will necessarily conduct an independent evaluation of potential claims against the defendant.

v. *Elliott,* 77 Conn. 247, 256, 58 A. 718 (1904); *Treat's Appeal from Probate,* 40 Conn. 288, 291 (1873). In the absence of continuing harm to the interests of the estate and its beneficiaries, removal is not justified merely as a punishment for a fiduciary's past misconduct. *Carroll* v. *Arnold,* supra, 543. Thus, in order to justify removing the defendant in this case, there must be evidence of a clear and continuing conflict of interest rendering the defendant unfit to perform its duties to the estate. The bare possibility of a cause of action on the estate's behalf against the defendant, if such a claim were frivolous or speculative, would not warrant removal. Whether the defendant has a conflict of interest that renders it unfit to continue in the service of the estate depends, in significant part, upon whether the estate's potential claims against the defendant have sufficient substance to warrant consideration by a successor fiduciary uninfluenced by a motive to avoid litigation.

Our review of the record indicates that the estate's potential claims against the defendant deserve serious independent consideration. We are unpersuaded by the defendant's claim that it would be "needless" and "futile" to sue itself as trustee. The credibility of the defendant's present position is undermined by its own action in listing a contingent claim against the trustees in the estate's amended inventory.[6] The defendant now argues that this earlier acknowledgment of a potential claim against the trustees was a mistake, made in the interests of defusing the plaintiffs' claims for removal and in expediting the Probate Court's

---

[6] The paradoxical nature of the defendant's position is underscored by the statements of its counsel before the Probate Court following its submission of the amended inventory listing a possible claim against the trustees: "We obviously deny any liability irrespective of what the outcome [of litigation against the conservator] may be and I'd like that clearly stated for the record."

approval of the inventory. In view of the defendant's clear interest in avoiding the institution of litigation against itself, we are unconvinced by this argument. See *In re Estate of Lucas,* supra, 1014.

In its brief, the defendant offers several substantive arguments in order to demonstrate that a claim against the trustees would be fruitless. The defendant's essential points are that: (1) the terms of the trust instrument authorized the trustees to pay income and principal to the conservator; (2) if the trust instrument did not authorize such payments, the most prudent course, which the defendant followed, was to bring an accounting action against the conservator; and (3) the final judgment in the defendant's action against the conservator is binding as to the amount of trust funds improperly paid, and thus has established the total possible recovery in that regard. While we make no attempt to evaluate conclusively the merits of the defendant's arguments, we are unpersuaded that they establish that the estate's potential claims against the defendant lack merit.

Turning to the first of the defendant's arguments, we note that the trust instrument does not specifically authorize the trustees to pay the income or principal of the trust to anyone but the grantor herself. As the trial court observed, the trust instrument could have been drafted to make explicit provision for payments to a conservator, in the event the grantor became incompetent, by incorporating by reference the powers set forth in the Fiduciary Powers Act, General Statutes §§ 45-100d, 45-100e.[7] Absent such a clear provi-

---

[7] General Statutes § 45-100d (c) provides in relevant part: "By an expressed intention of the testator or settlor so to do contained in a will or in an instrument in writing whereby a trust estate is created inter vivos, any one or more or all of the powers or any portion thereof enumerated in section 45-100e . . . may be, by appropriate reference made thereto,

sion, or any other explicit authority for the trustees to pay trust assets to a third party in the event of the grantor's incompetency,[8] determining whether such a power existed is a matter of construing ambiguous language in the trust. We are not convinced that the construction advanced by the defendant is conclusive, or that a court properly called upon to construe the trust could not find that the trustees' payments to the conservator violated the terms of the instrument.[9]

incorporated in such will or other instrument, with the same effect as though such language were set forth verbatim in such will or other instrument."

General Statutes § 45-100e (22) provides: "(22) Pay to or for Minors or Incompetents.—To make payments in money or in property, to or for a minor or incompetent in any one or more of the following ways: (A) To such minor or incompetent directly, if the fiduciary in its sole and absolute discretion deems such payment advisable; (B) to apply directly in payment for the support, maintenance, education, and medical, surgical, hospital, or other institutional care of such minor or incompetent; (C) to the legal or natural guardian of such minor or conservator of such incompetent; (D) to any other person, whether or not appointed guardian of the person or conservator by any court, who shall, in fact have the care and custody of the person of such minor or incompetent. The fiduciary shall not be under any duty to see to the application of the payments so made and the receipt by such person shall be full acquittance to the fiduciary."

[8] General Statutes § 45-75 (a) permits a conservator to "manage all the property [of the ward's estate] and apply so much of the net income of the property, and, if necessary, any part of the principal of the property, which is required to support the ward . . . ." The defendant does not claim that this statute confers upon the *trustees* any authority to pay income or principal from the trust absent a trust provision permitting such payments.

[9] The provision on which the defendant's interpretation relies is paragraph 1 of the trust, providing that "[t]he Trustees shall pay the net income to or for the benefit of the Grantor . . . ." We note that the trial court construed this provision as imposing on the trustees a nondelegable duty to pay trust income "for the benefit of" the grantor in the event of her illness. Accordingly, the trial court found that the trustees improperly delegated that duty by paying money from the trust to the conservator. We also observe that the relevant provision, even if construed in the manner advocated by the defendant, does not authorize the payment of trust *principal* by the trustees.

An additional claim raised by the defendant in the context of this argument is that the conservator could have successfully applied to the Probate Court to revoke the trust. Even if we were to conclude that the conservator could have prevailed in this regard, it does not follow that the

The defendant's second argument, that it acted prudently in pursuing the conservator, rather than the trustees, in order to recoup improperly applied trust assets, is equally unpersuasive. The fact that bringing suit against the conservator may have been *one* prudent, and ultimately fruitful, course of action does not mean that it was the *only* possible source of recovery available to the defendant. The trustees' fiduciary duty to manage the trust funds carefully was entirely separate from the conservator's duty to account for his expenditures on behalf of the grantor. If the trustees breached their fiduciary duty in paying trust assets to the conservator, their potential liability is not limited by the judgment against the conservator. Among other things, the trustees might be held liable for payment of the legal fees incurred in prosecuting the action against the conservator, which action would arguably have been unnecessary but for the trustees' breach of duty. See *Smith* v. *Scofield,* 19 Conn. 534, 539 (1849). These potential claims against the trustees warrant independent consideration that the defendant, in its present position, cannot provide.

The defendant's final argument, that the judgment against the conservator is "binding upon the plaintiffs" as to the amount of funds improperly accounted for by the executor, requires little discussion. As we have already noted, the duties of the conservator and those of the trustees, and the potential liabilities arising from the breaches of these duties, are completely distinct. Even if a court were to find that the plaintiffs, as representatives of the estate, are bound by the judgment against the conservator, this finding would not preclude the estate from bringing an independent action against the trustees, or against the defendant as executor for

---

trustees were, as a consequence, authorized to pay money from the trust to the conservator in the absence of specific trust language permitting them to do so.

failing to sue the trustees in a timely fashion.[10] We again emphasize that our discussion of the estate's potential claims against the defendant is not intended as an adjudication, however tentative, of such claims. Our examination makes clear, however, that such claims, contrary to the defendant's assertions, are not "needless" or "futile." To the contrary, they are sufficiently colorable to create a conflict between defendant's interest in avoiding liability and its duties to the estate.

Whether the estate's claims are pursued against the defendant as trustee, executor, or both, their existence places the defendant's continued service as executor under the shadow of a conflict of interest. The trial court, while recognizing the elements of this conflict in its memorandum of decision, declined to order the defendant removed as executor. In so declining, the court appeared to anticipate alternative resolutions of the plaintiffs' claims against the defendant that would make the defendant's removal unnecessary. The court rendered its decision without prejudice to the plaintiffs' subsequent renewal of the request for removal "should such an action become appropriate at a later time. . . . " At the time of the trial court's decision, however, the plaintiffs' litigation against the defendant had raged for five years, during which time the defendant had adamantly refused either to pursue an action against the trustees or to resign. As hindsight confirms, the trial court's optimism that the parties might reach a settlement was unwarranted. We conclude that the court's failure to order the defendant removed as executor, in the face of a clear conflict of interest that rendered the defendant unable to execute its fiduciary obligations to the estate properly, constituted an abuse of discretion. Accordingly, we order

---

[10] See footnote 5, supra.

this case remanded to the Probate Court with direction to remove the defendant as executor and to appoint a successor fiduciary.

Our disposition of this claim of error renders consideration of the plaintiffs' other claims unnecessary. As to the trial court's approval of the defendant's inventory, any grounds for appeal are mooted by our conclusion that a successor fiduciary must be appointed. The successor fiduciary may well decide to submit a new inventory and account for the Probate Court's approval after the claims against the defendant and the other trustee have been resolved. Our holding will similarly require the defendant, if it seeks to recover litigation expenses incurred in pursuing the claim against the conservator and in these appeals, to bring claims for them before the successor fiduciary. The plaintiffs therefore cannot claim to be harmed by the trial court's refusal to surcharge the defendant for these expenses.

## II

We now address the argument raised by the defendant in its cross appeal: that the trial court erred in failing to accept the defendant's final account as executor. The defendant claims that the trial court: (1) improperly undertook a "probable cause" examination to determine whether the plaintiffs had reasonable grounds to sue the defendant in a court of general jurisdiction; (2) erroneously determined that such reasonable grounds existed; and (3) failed to approve the defendant's litigation expenses, despite the plaintiffs' stipulation that those expenses were reasonable. We disagree.

The defendant's first claim is that the trial court exceeded its jurisdiction in determining that the plaintiffs had reasonable grounds to litigate against the defendant. The trial court correctly acknowledged, however, that its jurisdiction was limited to that con-

ferred on the Probate Court; *Palmer* v. *Hartford National Bank & Trust Co.,* 160 Conn. 415, 428, 279 A.2d 726 (1971); and that the plaintiffs' claims for money damages and equitable relief against the defendant should be brought in a court of general, rather than limited, jurisdiction. See id., 428–29; *Carten* v. *Carten,* 153 Conn. 603, 614, 219 A.2d 711 (1966); *Phillips* v. *Moeller,* 147 Conn. 482, 488–89, 163 A.2d 579 (1960). The court made its probable cause determination for the sole purpose of determining whether it should accept the defendant's final account, or refuse to accept it pending the resolution of the plaintiffs' claims in a court of general jurisdiction. Undoubtedly the court had jurisdiction to approve or deny the defendant's final account. General Statutes § 45-267;[11] see *Morse* v. *Wand,* 92 Conn. 286, 102 A. 586 (1917). Incident to that power, the court had the authority to make a non-dispositive determination that the plaintiffs had reasonable grounds to sue the defendant in a court of general jurisdiction. See *Chamberlin, Exr., Appeal from Probate,* 70 Conn. 363, 378, 39 A. 734 (1898); G. Wilhelm, Connecticut Estates Practice (1974) § 290. While the court clearly lacked authority to render a binding interpretation of the inter vivos trust; see *Phillips* v. *Moeller,* supra, 489; its preliminary interpretation of the trust, in the limited context of its probable cause determination, was not outside the scope of its jurisdiction. Nor did the probable cause determination amount to a "command" that the plaintiff sue the

---

[11] "[General Statutes] Sec. 45-267. JURISDICTION OF ACCOUNTS OF FIDUCIARIES. (a) Courts of probate shall have jurisdiction of the interim and final accounts of testamentary trustees, trustees appointed by the courts of probate, conservators, guardians, persons appointed by probate courts to sell the land of minors, executors, administrators and trustees in insolvency, and, to the extent provided for in this section, shall have jurisdiction of accounts of the actions of trustees of inter vivos trusts and attorneys-in-fact acting under powers of attorney created in accordance with section 45-69o."

defendant in its third party capacity as trustee, as the defendant contends. The trial court's decision neither compelled a lawsuit, nor concluded the rights of the potential parties to such a suit. It simply determined that litigation was a reasonable option for the plaintiffs.

The defendant's second claim, that the trial court reached the wrong result in its probable cause determination, requires little discussion. Since the court did not and could not reach a conclusive judgment on the merits of potential claims against the defendant in a court of general jurisdiction, we need only consider whether the court's determination was proper for the limited purpose for which it was employed: to decide whether to accept the defendant's account. For the reasons discussed in our discussion of the defendant's first claim, we conclude that the probable cause determination was a reasonable exercise of the court's jurisdiction.

The defendant's final claim is that the trial court improperly failed to approve its litigation expenses. While it is true that the plaintiffs do not contest the reasonableness of the amount of these expenses, the trial court properly recognized that the defendant may not be entitled to reimbursement from the estate, on the theory that, but for the negligence of the trustees, the legal fees would have been unnecessary. Under our disposition of the case, moreover, the defendant may seek reimbursement for its litigation expenses by presenting a claim for them before the successor fiduciary. See General Statutes § 45-205.

There is error, the judgment of the trial court is set aside and the case is remanded to the Superior Court with direction to remand the case to the Probate Court for further proceedings consistent with this opinion.

In this opinion the other justices concurred.