Shoemake v. Smith.

SHOEMAKE v. SMITH *et al.*

1.  **Appeal**: NOTICE : SERVICE. Where appellee was insane, and was represented in the trial court by a guardian *ad litem*, who also appeared therein as his attorney, *held* that service of the notice of appeal on the person who was both guardian and attorney was sufficient, without service on the insane party himself. (See Code, sec. 3178, and cases cited in the opinion.)

2.  **Depositions** : IRREGULARITIES WAIVED BY AGREEMENT. A motion to suppress depositions on the grounds that it did not appear therefrom that the witnesses were sworn, that the depositions were not properly certified, and that one of them was not signed, was properly overruled, where the parties had stipulated that one B. should act as commissioner in lieu of a notary public ; that the witnesses should be sworn by competent authority, and that B. should take the depositions on the type-writer ; and that, when taken in this way, and filed, they should have the same effect as if taken in the ordinary manner.

3.  **Evidence** : AGAINST INSANE PARTY : COMPETENCY. A witness cannot be excluded from testifying against an insane defendant as to personal transactions between himself and such defendant prior to his insanity, under section 3639 of the Code, unless he is first shown to come within the provisions of said section.

4.  —— : INTERPRETATION OF OBSCURE WRITING. Where the writing of an instrument is obscure, the person who wrote it may give his construction of the characters used, as evidence bearing upon its proper interpretation.

5. **Practice :** INFIDELITY OF ATTORNEYS : EFFECT UPON JUDGMENT. The fact that certain attorneys first appeared for one of the defendants, and, in violation of professional ethics, went over to the cause of the plaintiff, is no ground for reversing a judgment in favor of plaintiff.

6. **Mortgage :** IRREGULARITY WITHOUT UNCERTAINTY : REFORMATION. A mortgage recited a consideration of three hundred dollars, but it showed upon its face that it was given to secure the payment of "three hundred dollars on the ninth day of May, 1883 ; four hundred dollars on the ninth day of May, 1885 ; one hundred dollars on the ninth day of May, 1884, with interest thereon at the rate of ten per cent. per annum, according to the tenor and effect of the one promissory note," etc, *Held* that the purpose and effect of the mortgage were clear, notwithstanding the consideration was stated to be but three hundred dollars, and the notes to be secured, one instead of three.

7. **Vendors and Purchasers :** NOTICE OF PRIOR EQUITY : DEFECTIVE RECORD OF MORTGAGE. Where the recorder, in recording a mortgage, by mistake misdescribed the land, but a subsequent purchaser at execution sale, by himself and his attorneys, knew of the mortgage, and of the record, and had reason to believe that it was intended to cover, as it did, the land which he was about to purchase and did purchase, *held* that he could not claim to be a good-faith purchaser, but that he took subject to the mortgage. (See opinion for citations.)

*Appeal from Marion District Court.*—HON. O. B. AYRES, Judge.

FILED, MAY 24, 1890.

ACTION in equity to foreclose a mortgage alleged to have been executed by defendants, John and Jennie Smith, on the northwest quarter of the southeast quarter, and the north fifteen acres of the west twenty-five acres of the southwest quarter of the southeast quarter, of section 1, township 75, range 18, Marion county. Appellants deny that the plaintiff ever had a mortgage on the said northwest quarter of the southeast quarter, and that no such mortgage was of record ; that defendant De Kock purchased the land claimed to have been mortgaged at sheriff's sale on a judgment against John Smith for part of the purchase price, and received a

sheriff's deed therefor, which he held in trust for defendant Phillips; that appellants had no notice of the existence of such a mortgage as that claimed before said purchase, nor until after the commencement of this action. John Smith having become insane, E. R. Hays was appointed guardian *ad litem*, and answered, denying all the allegations in the petition and amendments. The case was submitted to the court, and judgment and decree entered in favor of the plaintiff. The defendants De Kock and Phillips appeal.

*Bousquet & Earle,* for appellants.

*Bolton & McCoy* and *Prouty & Gesman,* for appellee.

GIVEN, J.—I. The notice of appeal was not served upon defendant John Smith, but was served on

1. APPEAL: notice: service. E. R. Hays, his guardian *ad litem*. The appellee contends that under rule 28 and section 2615, Code, the service should have been upon John Smith, and also upon his guardian; and that, as Smith has not appeared nor joined in the appeal, nor been brought into this court by notice, no final decree can be entered, and hence the appeal should be dismissed. Rule 28 requires that service shall be made in matter of appeal in the same manner as provided for service of notice in the district court. Said section 2615 provides that service of notice upon persons who have been judicially declared to be of unsound mind "may be made upon him, and upon his guardian." "An appeal is taken by the service of a notice in writing on the adverse party, his agent, or any attorney who appeared for him in the case in the court below." Code, sec. 3178. The record shows that Mr. Hays appeared in the court below, not only as guardian *ad litem*; but also as attorney for John Smith. In *Hunt v. Hawley,* 70 Iowa, 183, and *Moore v. Held,* 73 Iowa, 538, there was no service whatever on the absent defendants. We think the service in this case on the guardian was sufficient.

Shoemake v. Smith.

II. Appellants' motion to suppress certain depositions, on the grounds that it does not appear therefrom

**2. Depositions: irregularities waived by agreement.** that the witnesses were sworn, that the depositions are not properly certified, and that one of them is not signed, is sufficiently answered by the agreement of counsel under which they were taken. It was stipulated that T. R. Beman should act as commissioner, in lieu of a notary; that the witnesses should be sworn by competent authority, and that Mr. Beman should take the depositions on the type-writer; "and, when filed, the depositions in this way taken shall have the same force and effect as depositions taken in the ordinary manner." Surely the motion should not be sustained, in the face of such an agreement.

Appellants objected to the testimony of J. B. Bolton, as to transactions and communications between

**3. Evidence: against insane party.** him and the insane defendant, John Smith, with respect to the execution of the mortgage in suit, and also to his being allowed to interpret his own handwriting in the mortgage. It is not shown that Bolton comes within the provisions of section 3639, Code. He was therefore a competent witness. When the writing is obscure, what it is may be

**4. ——: interpretation of obscure writing.** shown *aliunde*. 2 Phil. Ev. 733. It was competent for Bolton to give his construction of the characters used, and for the court to say therefrom, and from the writing, what the fact was.

III. Appellants moved to exclude Prouty & Gesman from appearing as attorneys for plaintiffs, on the

**5. Practice: infidelity of attorneys: effect upon judgment.** grounds that they had formerly appeared for their codefendant Mrs. Smith. It appears that Prouty & Gesman were consulted by Mrs. Smith, and entered their appearance for her in this case; that afterwards they withdrew their appearance for Mrs. Smith, since which time they have appeared for plaintiff. It also appears that prior to their withdrawal Mr. Prouty had a conversation

with Mr. Earle, attorney for appellee, concerning the mortgage as it appeared of record, to which he testifies. We think it evident that Mr. Earle would not have engaged in this conversation with an attorney opposed to the interests of his client. While it may be true that Prouty & Gesman concluded that Mrs. Smith had no interest to protect, and, therefore, withdrew their appearance for her, their appearance for the plaintiff, and the use made of the conversation with Mr. Earle, cannot be approved. However improper the conduct of Prouty & Gesman in appearing for plaintiff under these circumstances may be, it is no reason for reversing the action of the district court.

IV. We find the facts touching the claim in question to be, in substance, as follows: In May, 1881, John Smith purchased the land in controversy from one Holbrook, giving his note, with C. Phillips as surety, for three hundred dollars, balance of the purchase price, and has occupied the land as a homestead since. In 1882, Holbrook assigned the note before due to Snow and Haber, who brought suit thereon after maturity, pending which Mrs. Phillips paid Snow and Haber, taking an assignment of the note to De Kock, who prosecuted it to judgment. On October 15, 1884, De Kock. purchased the land at execution sale on the judgment, and thereafter received a sheriff's deed, and holds the same in trust for defendant Phillips. Under date of May 9, 1883, John Smith executed to plaintiff three promissory notes—one for one hundred dollars, one for four hundred dollars, and one for three hundred dollars, payable in one, two and three years, to secure which he and his wife, Jennie Smith, under the same date, executed a mortgage on the northwest quarter of the southeast quarter, aforesaid. On May 23, 1883, said mortgage was filed for record, and recorded. By mistake in recording, the forty-acre tract was described as the northwest quarter of the southwest quarter, instead of the northwest quarter of the southeast quarter.

6. MORTGAGE: irregularity without uncertainty: reformation.

The mortgage was originally drawn to secure the three-hundred-dollar note, and signed by John Smith, but not delivered. A few days thereafter, all the parties being present, the amounts of the other two notes were inserted at their request, and with their consent, and Mrs. Smith then signed the mortgage, and with her husband acknowledged the same. The scrivener neglected to change the consideration from three to eight hundred dollars, and the number of the notes secured from one to three.

V. Appellants contend that an attempted mortgage upon a homestead, which fails to describe it, cannot be reformed so as to describe it;

THE SAME.

that, as under section 1990, Code, a homestead can only be conveyed by the husband and wife concurring in and signing the same joint instrument, no agreement or intent to convey can supply this statutory requirement; that to decree a reformation of an instrument, so as to make it cover a homestead not described therein, would be compelling a conveyance that must be voluntary, and that had not been made; that it was intended to describe in the mortgage the land that Smith purchased from Holbrook is evident. It was the only land Smith owned. Mr. Bolton, who drew the mortgage, testifies that he copied the description from Smith's deed, and, with the mortgage before him, says it reads, "northwest quarter of the southeast quarter." We are satisfied the mistake in description occurred in recording. The mortgage shows upon its face that it was given to secure the payment of "three hundred dollars on the ninth day of May, 1883; four hundred dollars on the ninth day of May, 1885; one hundred dollars on the ninth day of May, 1884, with interest thereon at the rate of ten per cent. per annum, according to the tenor and effect of the one promissory note," etc. The agreement and obligations of the parties are perfectly apparent from this instrument, notwithstanding the consideration is named as three hundred dollars, and the number of notes secured to be

one instead of three. These errors could not mislead any persons to their prejudice. The reformation of instruments is only necessary as to material mistakes; such mistakes as make the instrument to express a different agreement from that intended. There being no mistake in the description of the land in the mortgage, and the agreement of the parties being fully expressed, notwithstanding the errors in naming the consideration and number of notes, the mortgage requires no reformation. It follows from these conclusions that the question of the right to reform an instrument so as to make it cover a homestead does not arise.

VI. Some questions are made as to the validity of the respective claims of the parties against John Smith. We discover no reason why both claims should not be held valid. The contest, therefore, is as to priority. Appellee's mortgage, and the recording thereof, is prior in date to De Kock's purchase, and no question of priority would arise if it were not for the mistake in copying the description of the land into the record. Appellants contend that a "prospective purchaser, having no knowledge to the contrary, has the right to presume that the record is a correct transcript of the instrument which purports to be recorded." We may add to this statement of the rule, that, when the prospective purchaser has actual knowledge of the record, and of the facts that would suggest to an ordinarily careful and prudent man that there was a mistake in the record, that is knowledge to the contrary. If he had only constructive notice of the record, or if he did not know of facts contradictory of it, he is bound by the record only. *Thomas v. Kennedy*, 24 Iowa, 397; *Miller v. Ware*, 31 Iowa, 524; *Disque v. Wright*, 49 Iowa, 588. "A purchaser who has knowledge of any fact sufficient to put him on inquiry as to the existence of some right or title in conflict with that he is about to purchase, and has neither inquired nor ascertained the extent of such title, has been guilty of a degree of negligence

7. VENDORS and purchasers: notice of prior equity: defective record of mortgage.

that is fatal to his claim to be considered a *bona-fide* purchaser." *Wilson v. Holcomb*, 13 Iowa, 111. The knowledge or notice of facts acquired by an attorney or agent, when engaged properly in the business of his client or principal, becomes in law the knowledge or notice of such fact to the client or principal." *Jones v. Bamford*, 21 Iowa, 219; *Sowler v. Day*, 58 Iowa, 252. Appellants knew through their attorneys, before De Kock's purchase, the state of the record. They knew that, at the time that mortgage was executed, Smith did not own any other land than that in controversy, and had no interest in the forty acres described in the record. Phillips knew, through Mrs. Smith, that they had executed a mortgage to plaintiff intended to cover the land they owned. Surely, here was such knowledge to the contrary of the record as would have put a person contemplating a purchase of the land upon inquiries that would have disclosed beyond question that plaintiff's mortgage was upon the northwest quarter of the southeast quarter, and not upon the northwest quarter of the southwest. Our conclusion upon the whole record is that the decree of the district court should be                    AFFIRMED.