In the Matter of the ESTATE OF John HELLER, Deceased.

In the Matter of the Trust Under the LAST WILL AND TESTAMENT OF John HELLER, Deceased, Daniel Heller, Trustee,

In the Matter of the CONSERVATOR-SHIP OF Nichole HELLER, Andrea Heller, Matthew Heller & Mark Heller, Minors.

Appeal of Daniel HELLER, Trustee.

No. 85–1754.

Court of Appeals of Iowa.

Dec. 23, 1986.

Robert Kohorst, of the Kohorst Law Firm, Harlan, for appellant Daniel Heller individually.

Richard A. Heininger, of Smith, Peterson, Beckman & Wilson, Council Bluffs, for appellee Council Bluffs Sav. Bank.

J.C. Salvo, of Salvo, Deren, Schenck & Lauterbach, P.C., Harlan, for Mary Lou Heller, objector.

Grant McMartin, Harlan, guardian ad litem for the children.

Jack W. Peters, of Stuart, Tinley, Peters, Thorn, Smits & Sens, Council Bluffs, guardian ad litem for the purpose of investigating objection to the executor's final report.

Ken Sojka, of Buckley & Sojka, Harlan, for the estate.

Heard by DONIELSON, P.J., and HAYDEN and SACKETT, JJ.

SACKETT, Judge.

Decedent John Heller was the natural father of four children who are all minors. Decedent and the children's natural mother, Mary Lou Heller, were divorced on November 1, 1982. At the time of his death on September 25, 1984, decedent had not remarried.

On November 23, 1982, decedent signed his last will and testament. In the will he appointed his brother, Daniel, as executor and gave all his property to Daniel as trustee for the benefit of his children. Daniel was given discretion to use the funds for the children's living and educational expenses. The children would each receive an equal share of the remainder if they lived to age 21.

After decedent's death Daniel qualified as executor. Subsequently Daniel also qualified as conservator[1] and trustee. This appeal involves the estate, trusteeship and conservatorship. Basically the four children share the benefits in each. However, their benefits in the estate and trust vest only if they survive to age 21. The conservatorship vests now.

On October 28, 1985, the trial court entered an order removing Daniel as executor, trustee and conservator and appointed the Council Bluffs Savings Bank as successor fiduciary in the matter. The trial court also ordered that Daniel receive no fees and be sued on his bond. The trial court, however, made no findings in its orders explaining the reason for the removal. Daniel filed a motion to enlarge and amend factfinding under Iowa R.Civ.P. 179, a motion for new trial and a motion to reconsider. These motions were overruled.

Daniel appeals contending (1) the trial court should not have removed him as executor, trustee and conservator, (2) the trial court should not have deprived him of his fees and (3) the trial court should not have ordered him sued on his bond. He further contends because payments were made after proper notice to the minors and under court order they are not subject to challenge. We reverse the orders removing Daniel as executor, trustee and conservator; disallowing Daniel fees; and ordering he be sued on his bond. We determine the minor heirs were not properly notified in

---

1. Mary Lou Heller joined with Daniel in his application to be appointed conservator.

earlier procedures. We remand to the district court with directions.

## I.

When John Heller died he was a farmer. He owned approximately 157 acres of farmland in his name alone. Adjacent to the tract he owned was a homestead of 2.5 acres. When John and Mary Lou were divorced the 2.5 acres was deeded to John and Mary Lou as tenants in common. Mary Lou was given the right to live there as long as any of the minor children remained in her care. Both tracts were jointly encumbered on three notes signed by John and Mary Lou to Federal Land Bank, The Farmers Home Administration and Farmer's Trust and Savings Bank. John had agreed to assume these obligations in the parties' dissolution decree but Mary Lou remained obligated thereon. John also had personal property including machinery and growing crops, most of which was encumbered for other indebtedness.

John had four current life insurance policies. One was credit life and went to the creditor. The second went to Mary Lou. There was a $100,000 whole life policy with Woodman Life with a double indemnity provision for accidental death. John was killed in an automobile accident.

There was some question raised about the Woodman policy after John's death. Woodman determined the beneficiary designation was not entirely clear and questioned whether the policy was payable to Daniel as conservator, Daniel as trustee, Daniel individually or to any person who may have been the children's conservator. To meet Woodman's requirement for immediate payment and to avoid protracted litigation with Woodman to determine the beneficiary, Daniel and Mary Lou agreed a conservatorship should be opened and jointly requested Daniel be conservator. Mary Lou also signed an affidavit recognizing the Woodman policy had been taken out as a condition of obtaining the Federal Land Bank mortgage, releasing any claim to the policy and asking the policy be paid to John's *estate*. The Woodman policy was paid to Daniel Heller, conservator. It is basically this $200,000 Woodman policy which has generated the controversy herein.

Daniel immediately sought to use the insurance he received as conservator to pay certain obligations of John's estate. In the conservatorship and estate proceedings Daniel filed an application with the court to apply a portion of the insurance proceeds to debts in John's estate. The application recited the fact the insurance had been taken out to satisfy requirements of the Federal Land Bank and the fact interest running on current obligations on the farmland made payment beneficial. The court ordered a five-day notice be given by ordinary mail to interested parties in the conservatorship. The court appointed Grant McMartin, attorney at law, as guardian ad litem to represent the four children at the hearing and in subsequent proceedings.

Notice of the hearing was mailed to Mary Lou Heller, natural mother of the children, at RFD #3, Box 18, Harlan, Iowa[2], and to attorney McMartin in his capacity as guardian ad litem for the children. McMartin filed an answer of guardian ad litem in which he entered his appearance for the children, denied the allegations of the application and asked the court to protect the children's interests. *No notice was mailed to or served on any of the four children.*

On November 5, 1984, in the estate, and on December 3, 1984, in the conservatorship, the court entered an order determining notice had been given as provided in the prior court order and no further notice need be given. The court found the guardian ad litem had filed an answer on behalf of the wards and the court had jurisdiction of both the parties and subject matter. The court then ordered Daniel to pay the requested debts. After the order was entered, $186,360.84 of the insurance money was used to pay debts in John's estate. These payments are now being challenged

---

**2.** This is the address shown for the minor children in the probate inventory.

based on the exempt nature of the insurance proceeds and the insufficient notice to the minor children.

## II.

■ We first must determine whether the trial court's orders in the estate proceeding and the conservatorship proceeding approving payment of bills were final orders. All orders and decrees of the court setting in probate are final decrees as to parties having notice and those who appeal without notice. Iowa Code § 633.36 (1985) and *Matter of Estate of Bruene*, 350 N.W.2d 209, 213 (Iowa App.1984). All orders without notice or appearance are reviewable at any time prior to the entry of the order approving the final report. Iowa Code § 633.37 (1985). If the children were properly notified the orders authorizing payment are final orders. If the children were not properly notified the executor's actions can still be examined.

Daniel argues the notices were sufficient and contends he paid bills with the knowledge and consent of Mary Lou, who was notified, *and* the guardian ad litem, who in his answer entered an appearance for the minor children.

Daniel argues *Shoemake v. Smith*, 80 Iowa 655, 657, 45 N.W. 744, 745 (1890) is controlling on this issue. In *Shoemake*, the defendant became insane and an attorney was appointed his guardian ad litem. The guardian ad litem answered and denied allegations of the petition. *Id.* A judgment was rendered for plaintiff. *Id.* A notice of appeal was not served on defendant, but rather on his guardian ad litem who also had appeared as the attorney for the defendant. *Id.* The court held the appeal was perfected because the rules in force provided an appeal is taken by service of notice in writing on the adverse party, the agent, or any attorney who appeared for him in the case below. *Id.* There was clearly statutory authority in *Shoemake* to serve the attorney. There being no such statutory authority here, we do not find *Shoemake* controlling.

In *Irwin v. Keokuk Savings Bank & Trust Co.*, 218 Iowa 477, 480, 255 N.W. 671, 673 (1934), the court stated:

> Minors who are unable to act for themselves may not be legally deprived of legacies or the property of an estate of which they are heirs without representation in judicial proceedings by a legally appointed guardian or a guardian ad litem. * * * Distribution thereof could only be made to the beneficiary if an adult or to a minor by payment to a legally appointed guardian of his property. The parent as natural guardian has no authority to act in the place thereof.

The Iowa Rules of Civil Procedure and the Iowa Probate Code which apply to probate procedures both contain provisions governing service on and representation of unrepresented minors. Iowa R.Civ.P. 56.-1(b) provides the original notice may be served on a person under 18 years by serving the guardian of his person or property, but provides "... where notice is served on behalf of the guardian ... then the court shall appoint without prior notice on the ward a guardian ad litem upon whom service shall be made and who shall defend for the minor." According to Iowa R.Civ.P. 17, all answers by the guardian ad litem filed under Iowa R.Civ.P. 14 should state whether there is a return on file showing proper service has been made on the ward and they should deny all material allegations prejudicial to the ward. Iowa Code § 633.118 (1985) provides:

> At or before the hearing in any proceedings under this Code, where all the parties interested in the estate are required to be notified thereof, the court, in its discretion, may appoint some competent attorney to represent any interested person who has been served with notice and who is otherwise unrepresented. The appointment of an attorney under the provisions of this section, shall be in lieu of appointment of a guardian ad litem provided for in the rules of civil procedure.

Both Iowa R.Civ.P. 14 and § 633.118 clearly provide the minor must first be served with notice and until he or she is properly

served he is not a party to the proceedings and the court would not have jurisdiction to appoint an attorney or guardian ad litem to represent his or her interest. *Cummings v. Landes,* 140 Iowa 80, 87, 117 N.W. 22, 24–25 (1908); *Rice v. Bolton,* 126 Iowa 654, 657, 100 N.W. 634, 635 (1904).

 Daniel argues the service was sufficient. He contends because Iowa R.Civ.P. 56.1(b) provides the court may appoint, without prior notice to the ward, a guardian ad litem upon whom service can be made and that because the guardian ad litem appeared for the minors, accepted service and was authorized under § 56.1(b) to do so there is no practicality in mailing four more copies of the notice to Mary Lou's household. In *Ross v. Board of Supervisors of Wright County,* 128 Iowa 427, 435, 104 N.W. 506, 509 (1905), the court addressed a similar situation where a minor, one of the property owners, was not given notice of a drainage ditch project, but appeared by her guardian and was awarded damages. The court stated:

> Moreover, when the omitted owner voluntarily appeared to the proceedings, and procured an allowance of her claim for damages, we think it will be held to operate as a waiver by her of all objections based upon the failure to serve her with notice. * * * Had the notice been served, the ward could have done no more than to appear by guardian for the protection of her rights. He did so appear, and brought the matter before the court for its consideration and approval. *Id.*

Manifestly, the purpose of requiring that original notice be served on the guardian is not only that he be given opportunity to appear and defend, but also to insure to the court itself there is a full and fair disclosure of the case it must decide and to protect the interest of the ward. *Cummings,* 140 Iowa at 86, 117 N.W. at 24; *Jones v. Schaffner,* 193 Iowa 1262, 1270–71, 188 N.W. 787, 791 (1922). The Iowa courts have also determined a guardian's voluntary appearance in a divorce action was really no more than an acknowledgment of service and that the guardian had

the right to so appear despite the fact an original notice of suit had not actually been served on the ward. *Conklin v. Conklin,* 257 Iowa 259, 263, 132 N.W.2d 459, 461 (1965).

However, the appearance here is different because we are dealing with a guardian ad litem not a guardian. Because the guardian ad litem is a special guardian appointed for a limited purpose, the guardian ad litem is not necessarily a part of the general law of guardian and conservatorship. Note, *Guardians Ad Litem,* 45 Iowa L.Rev. 376, 380 (1960):

> Ordinarily, the crucial jurisdictional prerequisite for obtaining a valid judgment against a minor or incompetent is sufficient service of process upon the disabled party prior to the appointment of a guardian ad litem. Either absence of service or defective service will prevent a court from obtaining jurisdiction and a nunc pro tunc appointment of a guardian ad litem will not cure the defect. * * * Iowa Rule of Civil Procedure 56 sets up two specific conditions which must exist before it is permissible to appoint a guardian ad litem to receive service. The first requires that the process involved be served on behalf of the disabled party's guardian or other fiduciary. The second provides that the guardian or fiduciary bringing action against the disabled party be the only person upon whom service directed to the ward could be made. If both of these conditions exist, a guardian ad litem is to be appointed to receive service and defend the action. Since the Iowa statute clearly creates an exception to the general rule, it would seem that the precise conditions set forth in the statute must exist before appointment without notice will confer jurisdiction upon the court.

We determine § 56.1(b) does not apply to the instant case. We also consider the Iowa court's decision in *In re Wissink's Estate,* 242 Iowa 441, 46 N.W.2d 717 (1951), is applicable.

In *Wissink* the appeal involved the validity of the administration proceedings by which decedent's estranged wife obtained appointment of her father as administrator and the allowance of her claim sufficient to absorb the entire estate to the prejudice of the children. *Wissink*, 242 Iowa at 442, 46 N.W.2d at 718. The administrator filed his final report having first procured an order setting it down for hearing and prescribing a service of notice thereof on the children by mailing a true copy of said notice of hearing to the mother of said minor children. *Id.* The children were ages eight and three. *Id.* The same order appointed a guardian ad litem for the children "to make proper investigation of the facts as set forth in said report and to file his answer herein." *Wissink*, 242 Iowa at 443, 46 N.W.2d at 718. The guardian ad litem filed a perfunctory denial of "each and every allegation * * * and especially every allegation prejudicial to his said wards." *Id.* There was no direct reference to the claim and no indication of any investigation as to its merits. *Id.* The mother acknowledged receipt of the notices directed to the minors. *Id.* The court said:

> Ordinarily, the mother, with the children in her custody, would have been the proper person upon whom to make service. But by reason of the claim she made against the estate just before the final report was sworn to and filed she was definitely a hostile party as to the property of the estate. * * *

> The casual conduct of the guardian ad litem, as shown by the record, is not reassuring. Section 638.37, Code 1950, I.C.A., authorizes the appointment of an attorney to defend the interests of incompetents in matters of this kind and might well have been invoked.

*Wissink*, 242 Iowa at 446, 46 N.W.2d at 721.

Because the notice served on the minors was not sufficient we determine the orders authorizing payment of bills in the estate and conservatorship are not final orders on these issues.

## III.

We next address the issue of whether Daniel was properly removed as fiduciary in the three matters.

In the approximately 11 months between Daniel's appointment as executor and the filing of a final report, to which objections were raised, Daniel diligently sought to inventory the estate, managed the farm operation, liquidate assets and satisfy estate obligations. Other than the issue of paying debts with the insurance funds and an extremely minor matter of whether a few of John's personal effects should be delivered to the children now or when they reached their majority, there was no complaint made as to the manner in which Daniel handled the difficult business of the estate, nor did the trial court find any mismanagement in his order removing Daniel.[3] We do not find any in our reviews of the file either.

Additionally, during the course of administration, Daniel continued to pay Mary Lou the $450 per month child support and $50 alimony per month in accord with Mary Lou's and John's dissolution decree. Also, Mary Lou receives about $1,000 per month social security benefits for the children which are paid directly to her and are not a part of this proceeding.

There is a question raised as to whether John's estate was solvent. The original probate inventory showed assets of $416,-741 and liabilities of $494,000, which would indicate a negative worth of $78,259. However, subsequent filings indicate the residential property may have been undervalued by $10,000, the machinery undervalued by $8,000, and the crops undervalued by $14,000, for net assets of $448,741. Furthermore, the liabilities listed in the probate inventory included the amount of $70,-150 for future alimony and child support. There was no provision in the dissolution decree for the alimony and child support to continue after John's death. The modified figures would indicate a net estate of $24,-

---

3. The trial court made no factual findings in its orders removing Daniel.

000. We do not make a determination as to the solvency or insolvency of the estate. However, we direct the trial court to consider these issues on remand.

Daniel ultimately sought to close the estate and filed his final report and accounting. At that point most of the assets had been disposed and the debts liquidated. He asked that John's interest in the farmland and homestead property be transferred to the trust. The farmland was subject to a $107,194.44 mortgage to the Federal Land Bank. The estate accounting showed a balance of $89,992.36 to distribute to the trust. The accounting showed a total of $5,500 had been paid to Mary Lou for alimony and child support during the time Daniel was executor.

Mary Lou on behalf of the children objected to these reports. She contended that at the time the estate was opened it was insolvent and the four children bore no personal liability for decedent's debts. Mary Lou claimed the loan of $186,360.84 from the conservatorship to the estate was improper. Mary Lou had an opportunity to object prior to the orders approving payment. She did not do so. Her interests are adverse to the children in some respects. The insurance proceeds paid bills on which she was jointly and severally liable. She also received alimony and child support from the insurance money.

The court appointed attorney Jack W. Peters to investigate the claims and make recommendations to the court. Peters filed a written report indicating he had reviewed the files of the attorney for the estate. He determined the life insurance proceeds should have gone to the children free of any obligations. He determined the gross estate was $422,500, debts were $418,000 (less alimony, etc.) and the farmland unstable. He determined Daniel applied to pay debts and in his application stated the estate debts exceeded assets. Peters determined that although a guardian ad litem was appointed, the order appointing the guardian ad litem did not state the guardian was to obtain notice for the wards. He determined notice was not properly given

to the minor children and it should be challenged. He went on to say Daniel should be removed and sued on his bond.

Daniel made an extensive response to the report. A hearing was had. The attorney for Mary Lou and the attorney for the estate appeared. Neither Peters nor attorney McMartin appeared. The children were not represented at the hearing. The only evidence introduced was Daniel's verification of his response to Mary Lou's objections. The court subsequently filed the order in which it removed Daniel in all three matters. The orders made no findings of fact as to why Daniel should be removed.

■ An action for removal of a fiduciary is an equitable proceeding and our review is de novo. *In re Estate of Fisher*, 176 N.W.2d 801, 804 (Iowa 1970). Iowa Code § 633.33 (1985) provides:

Actions to set aside or contest wills, for the involuntary appointment of guardians and conservators, and for the establishment of contested claims shall be triable in probate as law actions, and all other matters triable in probate shall be tried by the probate court as a proceeding in equity.

■ A hearing on an allowance of attorney fees is in equity and our review is de novo. *Matter of Estate of Simons*, 288 N.W.2d 549, 551 (Iowa 1980); *Bass v. Bass*, 196 N.W.2d 433, 435 (Iowa 1972); *In re Estate of Cory*, 184 N.W.2d 693, 696 (Iowa 1971). We give weight to the fact findings of the trial court, especially when considering the credibility of witnesses but are not bound by them. *Matter of Guardianship of Stewart*, 369 N.W.2d 820, 822 (Iowa 1985).

The procedure for removing a fiduciary is set forth in Iowa Code § 633.65 (1985), which provides:

When any fiduciary is, or becomes, disqualified under section 633.64, has mismanaged the estate, failed to perform any duty imposed by law, or by any lawful order of court, or ceases to be a resident of the state, then the court may

remove him. The court may upon its own motion, and shall upon the filing of a verified petition by any person interested in the estate, including a surety on the fiduciary's bond, order the fiduciary to appear and show cause why he should not be removed. Any such petition shall specify the grounds of complaint. The removal of a fiduciary after letters are duly issued to him shall not invalidate his official acts performed prior to removal.

Removal of an executor or guardian should be done in accordance with statutory provisions for removal. *See Haddick v. District Court of Polk County,* 160 Iowa 487, 141 N.W. 925 (1913).

▇ To secure statutory removal the procedure must be followed. The court may not remove an administrator on grounds that the interest of the estate require it, without complying with statutory procedure. *See In re Estate of Quinn,* 243 Iowa 1266, 55 N.W.2d 172 (1952); *In re Estate of Collicott,* 226 Iowa 106, 283 N.W. 869 (1939); *In re Estate of Mann,* 208 Iowa 1193, 225 N.W. 261 (1929); *Haddick,* 160 Iowa at 500, 141 N.W. at 930.

▇ A petition for removal is a pleading, *In re Estate of Bagnola,* 178 Iowa 757, 154 N.W. 461, 463 (1915), and upon filing a petition a citation shall issue to the person complained of. *See Galloway v. Farber,* 252 Iowa 360, 106 N.W.2d 920 (1961); *In re Guardianship of Husmann,* 245 Iowa 830, 64 N.W.2d 252 (1954); *In re Guardianship of Cannon,* 231 Iowa 366, 1 N.W.2d 217 (1941); *In re Estate of Lininger,* 230 Iowa 201, 297 N.W. 310 (1941); *In re Estate of Arduser,* 226 Iowa 103, 283 N.W. 879 (1939); *In re Guardianship of Rummels,* 164 Iowa 659, 146 N.W. 462 (1914).

The procedure followed clearly was not in accordance with § 633.65. Because we determine the trial court abused its discretion in removing Daniel, we need not address whether Daniel waived the irregularities in the procedure by attending the hearing on the objections to the final report and giving evidence. We must determine whether the objections filed and the record support removal. We find they do not.

▇ Executors are subject to removal for breach of their duties. *In re Estate of Newby,* 159 N.W.2d 496, 503 (Iowa 1968). Iowa Code section 633.65 allows removal of an executor who "is disqualified" because he is unsuitable as well as one who "becomes disqualified" because he is unsuitable. *Matter of Estate of Cutler,* 368 N.W.2d 724, 726 (Iowa App.1985). The question of suitability is not restricted to whether an executor is competent, nor must criminal or civil liability be proved. *Id.* at 727–28.

We must determine what the record shows to support a finding of unsuitability or breach of duty by Daniel. Daniel made the required filings on a timely basis and had completed the basic responsibilities and filed his report within approximately 11 months of the date he qualified as executor, a reasonable time considering he had to wind up decedent's farming business, dispose of assets, etc. Before Daniel paid decedent's debts with life insurance proceeds he filed with the court in both the conservatorship and the estate a detailed request completely outlining how he intended to proceed and asking the court's approval. He obtained approval from the court to proceed and he proceeded in accordance with the court's direction. Daniel is not an attorney. Daniel had hired an attorney.

▇ The measure of care and diligence which a fiduciary must bring to the management of an estate is that which an ordinary prudent man or woman would exercise under like circumstances in his or her own affairs. *See 31 Am.Jur.2d, Executors and Administrators* § 217; 28 A.L.R.3d 1191, 1195.

In assessing whether Daniel should be removed on the basis of following legal advice on the issue of notice and payment of estate debts with exempt insurance proceeds, we look to this standard of care. *See* 28 A.L.R.3d 1191, 1195. Courts have basically held where a fiduciary has (1) exercised due care or prudence selecting an attorney, (2) there was no misconduct or

negligence by the fiduciary in employing the attorney, (3) the fiduciary has properly supervised the attorney and has not passively surrendered control of the estate property to the attorney, and (4) there is no collusion, negligence or inattention on the part of the fiduciary, then the fiduciary should not be charged with errors made by legal counsel. *See Laramore v. Laramore*, 64 So.2d 662, (Fla.1953); *Christy v. McBride*, 2 Ill. 75 (1832); *Kaufman v. Kaufman's Administrator*, 292 Ky. 351, 166 S.W.2d 860 (1942); *Dodge v. Stickney*, 62 N.H. 330 (1882); *In re Sharp's Estate*, 61 N.J.Eq. 601, 48 A. 327 (1901); *In re Hazeltine's Estate*, 119 N.J.Eq. 308, 182 A. 357 (1936); *Julian v. Abbott*, 73 Mo. 580 (1881); *In re Chandler's Estate*, 136 Or. 128, 297 P. 841 (1931); 28 A.L.R.3d 1191, 1198–1201. This is particularly true in situations where the fiduciary is a nonlawyer and where the attorney's error was purely a legal matter. *See Murdock v. Murdock*, 370 So.2d 290 (Ala.1979).

We determine the following:

1. Daniel made a detailed application to the court in both the estate and conservatorship setting forth what bills he intended to pay and that he intended to pay the bills with the life insurance proceeds.

2. Daniel knew Mary Lou, the mother, natural guardian and custodian of the minor children, was notified of what he intended to do and she did not object. He also visited with her about how he intended to proceed.

3. Daniel knew an attorney had been appointed as guardian ad litem for the minor children and had been served with notice.

4. Daniel was the executor and trustee his late brother had designated.

5. The decision Daniel made enabled his brother's bills to be paid, the homestead to remain available for the children, and debts on which the children's mother remained obligated, though assumed by the father in the dissolution decree, were satisfied.

6. The court entered an order determining the proper persons were before the court and ordered Daniel to make the payments he requested. Only then did Daniel make the payment.

7. All applications and orders were prepared by his attorney.

8. The issues of the service of notice and exempt status of assets are clearly issues which a nonlawyer executor would rely upon his or her attorney for advice.

 We determine there is no evidence in this record to support a finding Daniel should be removed as fiduciary in the three matters. We reverse the orders removing Daniel as executor, conservator and trustee; disallowing his fees; and being sued on his bond. We remand this case to the trial court for further proceedings.

We remand to the district court to prescribe the necessary notice to be served on the minors. After service the trial court shall appoint an attorney to represent the minors.

We do not intend by this opinion to infer whether *after proper notice* the trial court should approve or disapprove of the final report in the estate and the report in the conservatorship. The record made to date is not sufficient for such a determination.

Because the minor children and beneficiaries are not yet a party to these actions, all issues, including payment of fees, are not yet resolved.

Costs on appeal are taxed to the objector, Mary Lou Heller.

**REVERSED AND REMANDED.**