**IN THE COURT OF APPEALS OF IOWA**

No. 21-1082
Filed August 31, 2022

**IN THE MATTER OF THE ESTATE OF ROBERT SCOTT DARRAH, Deceased.**

**ROBERT J. DARRAH,**
     Appellant.
_____

Appeal from the Iowa District Court for Pottawattamie County, Amy Zacharias, Judge.

Robert J. Darrah appeals the district court order setting aside its earlier order admitting a lost will to probate. **CONDITIONALLY AFFIRMED AND REMANDED.**

Steven H. Krohn of Smith, Peterson Law Firm, LLP, Council Bluffs, and Maynard H. Weinberg of Weinberg & Weinberg, P.C., Omaha, Nebraska, for appellant Robert J. Darrah.

J. Joseph Narmi, Council Bluffs, for appellees Reagan Q. Darrah and TS Bank, Co-Administrators of the Estate of Robert Scott Darrah, and Reagan Q. Darrah (individually).

Jon E. Heisterkamp and John C. Rasmussen of Peters Law Firm, P.C., Council Bluffs, for appellee Jan R. Darrah as conservator for minor children A.R.D. and M.M.D.

Maura C. Goaley, Council Bluffs, attorney for appellee minor children A.R.D. and M.M.D.

Patricia Scheinost, Council Bluffs, guardian ad litem for appellee minor children A.R.D. and M.M.D.

Considered by Bower, C.J., and Schumacher and Badding, JJ.

**BOWER, Chief Judge.**

This appeal arises from the administration of the estate of Robert Scott Darrah (Scott).[1]  Robert J. Darrah (Robert) appeals the district court order setting aside an earlier order admitting a lost will to probate in Scott's estate (Estate). Finding no legal error in the district court's ruling the minor children's motion to set aside was timely and finding substantial evidence supports the district court's ruling concerning a diligent search, we conditionally affirm and remand to the district court.

**I. Background Facts & Proceedings.**

On April 5, 1999, Scott executed a will.  Scott worked as a certified financial planner and owned his own business.  At the time, he was married to Jan R. Darrah and had no children.  Over the next several years, Scott and Jan had three children: Reagan, A.D., and M.D.  In December 2018, Scott and Jan dissolved their marriage, but the property division was not determined until July 2020.

On November 9, 2020, Scott died.  Scott's parents—Robert and Saundra— and his sister Rhonda Gibler searched his home and place of business, looking for his will.  Rhonda retrieved Scott's file from the attorney who drafted the 1999 will, Steve Gunderson.  They did not locate the original 1999 will in the file or Scott's papers.

On November 18, just nine days after Scott's death, Robert filed a "Petition for probate of lost will and appointment of executor."  The petition stated "[a] diligent

---

[1] Because multiple parties involved in this action share the last name "Darrah"— including Scott, his parents Robert and Saundra, his ex-wife Jan, and their children—we will refer to all family members by their first names.  Scott and Jan's younger children are minors, and we will refer to them by their initials.

effort has been made to locate the original will" and, to Robert's knowledge, "[Scott] never destroyed, cancelled or revoked it." Robert submitted a copy of the executed 1999 will with the petition, which named him as executor. Later that day, the court entered an "Order admitting the lost will to probate and appointing executor." Notice was not provided to Scott's children or heirs before the order issued; only Robert had entered an appearance, and the petition did not indicate two of Scott's children were minors.

A statutory provision revoked all provisions in Scott's will to Jan's benefit because of the dissolution; the will's provisions placed any bequests to Jan into a Family Trust for the benefit of the children.[2] The majority of Estate assets, including the proceeds from the sale of Scott's financial planning business and his house, were to be placed in the Family Trust, which was to be administered by First Nebraska Trust Company (FNTC).

Scott had a second business, which owned the building that housed his financial planning business and Saundra and Robert's accounting business. The stock from this business was to be placed in a separate trust (Trust) administered by FNTC, with the proceeds to be used for Robert and Saundra's care. Upon Robert and Saundra's deaths, the remainder of this Trust was to be divided, with half going to Scott's sister Rhonda, and the other half placed in the Family Trust.

On November 20, Robert sent by ordinary mail a notice to Jan (individually) and each of Scott's children stating:

---

[2] Iowa Code section 633.271(1) (2020) provides, "If after making a will the testator is divorced . . . , all provisions in the will in favor of the testator's spouse . . . are revoked by the divorce or dissolution of marriage, unless the will provides otherwise."

You are hereby notified that on November 18, 2020, the last will and testament of Robert Scott Darrah, deceased, bearing date of April 15, 1999, was admitted to probate in the above named court and that Robert J. Darrah was appointed Executor of the estate. Any action to set aside the will must be brought in the district court of said county within the later to occur of four months from the date of the second publication of this notice or one month from the date of mailing of this notice to all heirs of the decedent and devisees under the will whose identities are reasonably ascertainable, or thereafter be forever barred.

Notice of probate was published in the Council Bluffs daily paper on November 22 and 29. The notice did not include information the probate document was a lost will. Robert mailed notices directly to Scott's minor children—notice was not served on any conservator or guardian for the minors; Jan was served individually, but not as a parent on behalf of the children.[3]

In December, Robert began filing motions and making decisions in the dissolution case on behalf of the Estate, which included stopping payments for child support, spousal support, and other payments required by the dissolution decree. Robert opined, "I figured that stopped at death and consequently that would be decided sometime in the future." In late December, Robert arranged the sale of Scott's financial-planning business.

---

[3] Iowa Rule of Civil Procedure 1.305(2) states, "Original notices are 'served' by delivering a copy to the proper person." The rule explains:

Upon a minor by serving the minor's conservator or guardian, unless the notice is served on behalf of such conservator or guardian, or the minor's parent, or some person aged 18 years or more who has the minor's care and custody, or with whom the minor resides, or in whose service the minor is employed. Where the notice is served on behalf of one who is the conservator or guardian and the conservator or guardian is the only person who would be available upon whom service could be made, the court shall appoint, without prior notice to the ward, a guardian ad litem [(GAL)] who shall be served and defend for the minor.

On January 12, 2021, Robert requested a GAL or conservator be appointed for M.D. and A.D. in the *dissolution* action to protect their interests, citing "an apparent conflict of interest" for Jan.  He made no similar request in the probate proceedings, though the same conflict of interest existed.

On January 15, Jan's attorneys filed an appearance and appeared separately on Reagan's behalf.  Reagan and Jan as mother/next friend of A.D. and M.D. requested an examination of Robert as fiduciary, questioning his encumbrance of legal fees in the dissolution proceeding without the approval of the probate court.

In a separate conservatorship proceeding, Jan was appointed as conservator for A.D. and M.D. in late January or February.  Reagan obtained her own attorney in mid-March.

On March 18, in the dissolution action, Robert was ordered to "properly notice the minor children through their conservator regarding any claim or issue against the minor children that needs to be addressed by the court."  The court stated it would address the question of appointing an attorney and/or a GAL for the children after notice was served.

In late March, because Robert had stopped support payments in the dissolution case, Jan requested a child-support allowance for A.D. and M.D. under Iowa Code section 633.376 in the probate case.  She also filed a claim against the Estate and requested the court take judicial notice of the ordered distributions in the dissolution decree on which Robert had made no payments.  Reagan filed a claim against the Estate for a support allowance and made a claim for funds allegedly taken from her by Scott.  Robert resisted both support allowances

because Scott had no surviving spouse, so the provisions of section 633.376 were not applicable, and the insurance proceeds were sufficient to pay for the children's support.

On April 5, in her capacity as conservator for A.D. and M.D., Jan filed a motion to set aside the order admitting the lost will to probate. She noted there is a presumption that a lost will has been revoked by destruction, and she argued Robert "failed to provide any evidence whatsoever to overcome the presumption that the decedent's Last Will and Testament dated April 15, 1999, was revoked by destruction." Robert resisted, asserting Jan failed to challenge the lost will within the time allowed by law.

On April 6, an attorney and a GAL were appointed to represent A.D. and M.D.'s interests in the dissolution matter. On April 22, Jan filed a motion that the same attorney and GAL be appointed to represent the children in the probate proceeding. The court granted the motion the same day.

On April 23, Reagan filed a motion to set aside the order admitting the lost will, echoing many of Jan's claims and noting the notice of probate did not include the information it was a lost will and did not produce the lost will to any beneficiary.

The hearing on the motion to set aside and examination of fiduciary was set for April 27 and May 12. At the start of the hearing on April 27, the children's newly-appointed attorney and GAL each orally joined in the motion to set aside the order admitting the lost will.

First, the district court addressed Robert's assertion the motion to set aside was untimely. The district court ruled although Jan and Reagan had proper notice and failed to object within the requisite time frame, A.D. and M.D.'s request to set

aside *was* timely based on when their counsel was appointed. The court then addressed whether clear and convincing evidence proved the lost will should be admitted to probate. The court determined Robert did not show he conducted a diligent search for the original will and the lost will should not have been admitted to probate. The court converted the Estate to an intestate administration, removed Robert as executor, and appointed Reagan and a bank as administrators.

Robert appeals, contending the motions to set aside were untimely, substantial evidence established a diligent search was made for the lost will, and the court failed to find FNTC was an indispensable party.

**II. Standard and Scope of Review.**

Iowa Code section 633.33 dictates how probate actions are tried: "Actions to set aside or contest wills, for the involuntary appointment of guardians and conservators, and for the establishment of contested claims shall be triable in probate as law actions, and all other matters triable in probate shall be tried by the probate court as a proceeding in equity." We review equity cases de novo, and all other cases for correction of errors at law. Iowa R. App. P. 6.907.

**III. Analysis.**

The parties disagree on which part of the probate code controls this action. Robert asserts it is a will contest and subject to the limitations found in Iowa Code sections 633.308 through 633.320. The Appellees[4] argue their motions to set

---

[4] The newly-appointed administrators of the Estate, Jan as conservator for the minor children, and all three children individually (by way of Reagan's attorney, the attorney for the minor children, and the GAL for the minor children) collectively filed a brief in support of the district court's order. We will refer to them collectively as "Appellees."

aside the order admitting the lost will to probate were brought under section 633.37 because the challenged order was filed without notice or appearance.[5] The district court applied the will-contest provisions in its analysis, and we do the same.

Because the probate court heard this matter at law, our standard of review is for correction of errors at law. The district court's conclusions are binding on us if supported by substantial evidence. *In re Est. of Wiarda*, 508 N.W.2d 740, 742 (Iowa Ct. App. 1993).

**A. Timeliness.** First, Robert challenges the district court's ruling on the motion to set aside the order admitting the lost will, asserting all motions were untimely under Iowa Code section 633.309.[6] The district court found only the minor children's motion was timely "because they had no ability to bring these issues before the court until they had counsel appointed."

Robert states,

> An attorney as well as a [GAL] could have been appointed long before April 22, 2021[,] when they were appointed if the conservator for the two minor children and the attorney for the conservator were insufficient to represent their interests under the law. An attorney for the minors and a guardian ad litem could have been added immediately or even before the conservator was appointed.

---

[5] Section 633.37 provides, "All orders entered without notice or appearance are reviewable by the court at any time prior to the entry of the order approving the final report."

[6] Section 633.309 establishes the limitations period for an action to set aside the probate of a will:

> An action to contest or set aside the probate of a will must be commenced in the court in which the will was admitted to probate within the later to occur of four months from the date of second publication of notice of admission of the will to probate or one month following the mailing of the notice to all heirs of the decedent and devisees under the will whose identities are reasonably ascertainable, at such persons' last known addresses.

He further notes Jan, as conservator for A.D. and M.D., filed the written motion to set aside the order admitting the lost will on April 5—more than four months after notice had been mailed to the children—and the attorney and GAL appointed to represent the minor children failed to file a written motion, instead "belatedly join[ing] in the objection orally at the trial."

"All orders and decrees of the court [sitting] in probate are final decrees as to parties having notice and those who appeal without notice." *In re Est. of Heller*, 401 N.W.2d 602, 605 (Iowa Ct. App. 1986).

> Both Iowa Rule of Civil Procedure [1.212] and section 633.118 clearly provide the minor must first be served with notice and until he or she is properly served he is not a party to the proceedings and the court would not have jurisdiction to appoint an attorney or guardian ad litem to represent his or her interest.

*Id.* at 605–06. "We have said that ordinarily the mother would be a proper party upon whom to make service of notice to minors. But it has been held such service of notice upon a parent whose interests are adverse to the minor confers no jurisdiction of the person of the minor." *In re Est. of Wissink*, 46 N.W.2d 717, 721 (Iowa 1951).

> Manifestly, the purpose of requiring that original notice be served on the guardian is not only that [they] be given opportunity to appear and defend, but also to insure to the court itself there is a full and fair disclosure of the case it must decide and to protect the interest of the ward.

*Heller*, 401 N.W.2d at 606.

Under Iowa Code section 633.309, the minor children had *the later* of four months after publication or one month following the mailing of notice to file a petition to set aside the lost will. Our law is equally clear that notice must be served on "the minor's conservator or guardian." Iowa R. Civ. P. 1.305(2). Jan's interest

in the Estate resulting from the dissolution action is clearly adverse to the interests of the minor children as Scott's heirs, rendering notice to her as parent of A.D. and M.D. insufficient to confer jurisdiction—notice would have to be served on their conservator. *See Wissink*, 46 N.W.2d at 721.

In January 2021, Robert sought to have a conservator and/or GAL appointed on behalf of the minor children in the *dissolution* proceeding due to Jan's conflict of interest, but made no corresponding request in the probate case. Jan appears to have been appointed conservator for the minor children soon after.[7] On March 18, in the dissolution proceeding the court ordered proper notice to the minor children through their conservator.

Despite this clear direction to serve the conservator, Robert did not send any notice relating to the probate case to Jan as conservator at any time after her appointment. Jan as conservator filed the motion to set aside the order admitting the lost will to probate on April 5, without ever receiving notice for the minor children in the probate case. The children's attorney and GAL each joined the motion to set aside on April 27, the day after they learned of their appointments.

Under these circumstances, we find no error in the district court's finding the motion to set aside on behalf of A.D. and M.D. as minor children was timely.

### B. Diligent Search.

> [T]o establish a lost will it is incumbent upon the proponent to prove by clear, satisfactory and convincing evidence (1) due execution and former existence of the alleged will (2) that it has been lost and could not be found after diligent search (3) that the presumption of

---

[7] Robert first refers to Jan as appointed conservator for the children in a February 9 motion relating to deferred compensation in the probate case. Jan's first filing as conservator for the children in the probate case occurred on March 26. Neither Robert nor Jan filed a notice of appointment.

destruction by decedent with intent to revoke it, arising from its absence at death, has been rebutted, and (4) contents of the will. The evidence need not be free from doubt.

*In re Est. of Crozier*, 232 N.w.2d 554, 556 (Iowa 1975).

The court noted a finding of diligent search in this case hinged on the credibility of Robert and Saundra and found they were not credible and had questionable motives.[8]   Even if we were to believe Robert's and Saundra's testimonies, their descriptions of their actions provides substantial evidence to support the court's finding regarding the lack of a diligent search.

During the hearing, Robert testified his search for Scott's will consisted of searching Scott's office and home,[9] checking for—but not finding—a safety deposit box, speaking to Scott's divorce attorney, and Rhonda's meeting with Steve Gunderson.  Robert did not check with any of Scott's friends and did not ask Jan if she had knowledge of a will.  Robert also did not ask Gunderson if he had the original will or if it was released to Scott.  Despite a notation in Gunderson's file that Scott wanted an Iowa notary for his new powers of attorney, Robert did not ask the notaries working in Scott's office if they had notarized any relevant documents for Scott.  Robert testified, "[Scott] never ever canceled the will or he would have had Steve Gunderson destroy it or he would have gone over there. I'm just saying there is nothing at all that indicates that he would have destroyed

---

[8] The district court noted Robert failed to disclose the existence the Estate file from Gunderson before the hearing, and Robert never spoke with Gunderson despite evidence of work on a more recent will in the file.  The court also found Robert's past convictions involving false statements and financial misdeeds, his evasiveness and failure to admit his wrongdoing, and his questionable decisions as executor called his credibility and motivation into doubt.

[9] Scott was in a newly purchased home—Jan stayed in the marital home after the divorce.

his will." He later testified he would not know if Scott tore up or disposed of the original will, and it was possible the original could have been torn up or disposed of any time after 1999.

During Robert, Saundra, and Rhonda's search for the will, they did not find a documents safe or locate a safety deposit box. Robert testified he searched Scott's new house and the office, but did not search Scott's old home because "[Jan] will not let me in the home." Saundra also testified she searched "through boxes in the office" and cleaned out Scott's house. In addition to visiting Gunderson, Rhonda searched her parents' office they shared with Scott. Robert also testified they searched Scott's house "every day for probably [thirty] days a month for like [two] or [three] months." Despite this testimony, the record shows Robert filed the petition to admit a lost will in probate and attested to a diligent search less than ten days after Scott's death.

Rhonda went to see Gunderson and received the paper copy of Scott's file. Gunderson testified he gave the original copy of the 1999 will to Scott and did not know if Scott disposed of it or not. Gunderson indicated he had encouraged Scott to update his will, but he did not recall doing any more work for Scott after the 1999 will. Rhonda provided the paper file to Robert, who did not visit with Gunderson or ask any questions about the file. After the hearing, Gunderson provided an electronic version of Scott's estate planning file to all parties.[10]

---

[10] The file included some drafted revisions to Scott's will dated 2001 and had a letter from Scott noting he and Jan wanted to name a legal guardian for their child if something happened to them and wanted to change provisions relating to his sister. Between 2001 and 2017, the file does not show any billable work for Scott. In December 2017, Scott used Gunderson to update his financial and medical

None of the three searching for the will—Robert, Saundra, and Rhonda—spoke with or otherwise contacted Jan or the children about the existence of a will or asked if Scott had left any papers in the marital home or safety deposit box. Jan was married to Scott for nineteen years after the execution of the 1999 will, and they had three children after its execution—which often leads to changes in estate planning. Yet Robert did not ask Jan about a potential will as part of his search. Robert did not know if Scott had possession of the original will since its execution in 1999, instead he simply offered without further question the photocopy of a twenty-year-old will without any knowledge if Scott had destroyed the original. Substantial evidence supports the district court's conclusion Robert did not prove clearly and convincingly he made a diligent search for Scott's will.

**C. Indispensable Party.** Robert's final claim on appeal is the district court erred in failing to join FNTC—the designated trustee for all trusts under the 1999 will—as an interested party and as an indispensable party under the Iowa Rules of Civil Procedure.[11] The Appellees counter FNTC "is a mere nominee under the unproven lost will" and did not qualify as an interested party under the statute. This issue was only raised to the district court at the hearing in the context of Robert's counsel noting FNTC had not been served with notice of the motion to set aside, but counsel did not lodge an objection or request they be brought in as an interested party.

_____

powers of attorney to designate his parents and sister as decision makers, but Gunderson did not recall that work.

[11] The Iowa Rule of Civil Procedure 1.234(2) definition of an indispensable party includes where "notwithstanding the party's absence the party's interest would necessarily be inequitably affected by a judgment rendered between those before the court."

"In all actions to contest or set aside a will, all known interested parties who have not joined with the contestants as plaintiffs in the action, shall be joined with proponents as defendants." Iowa Code § 633.312. The statute's only provided remedy is "the court shall order them brought in as party defendants." *Id.*; *cf.* Iowa R. Civ. P. 1.234(3); *JAKS Props., LLC v. St. Croix Hospice, LLC*, No. 17-1198, 2018 WL 5846088, at *9 (Iowa Ct. App. Nov. 7, 2018) ("[T]he proper relief for failure to add a necessary party is for the court to order the necessary party to be brought in."). The lack of an indispensable party may be raised for the first time on appeal, and, if valid, the case is remanded to the trial court to bring in the missing indispensable parties. *Ditch v. Hess*, 212 N.W.2d 442, 450 (Iowa 1973) (citation omitted).

It is unclear from the record if some property was placed in FNTC's name as trustee during Robert's time as executor. FNTC was to hold and manage all property passing through probate as trustee and will potentially lose income generated by management of the trusts. FNTC's interest is necessarily affected by the judgment in this case, qualifying it as an indispensable party under Iowa Rule of Civil Procedure 1.234(2). As the named trustee under the will, FNTC was sufficiently interested and should have been joined in the action under Iowa Code section 633.312. We therefore remand for the district court to bring in FNTC and to amend its order, if necessary, upon consideration of arguments or evidence offered relating to FNTC.

**D. Conclusion.** We find no legal error in the district court order as to the timeliness of the minor children's motion to set aside and conclude substantial evidence supports the district court's ruling that Robert did not prove a diligent

search had been made.  We conditionally affirm the order and remand to the district court.  Upon remand, the court shall bring in FNTC as an interested party, consider any arguments raised on its behalf, and address the disposition of any assets that may have been placed with FNTC as trustee.

**CONDITIONALLY AFFIRMED AND REMANDED.**